UNITED STATES of America,
Plaintiff–Appellee,

v.

Howard Weldon MARTIN,
Defendant–Appellant.

No. 92–50130.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 10, 1993.

Decided Sept. 3, 1993.

Gonzalo Curiel, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Ward S. Clay, San Diego, CA, for defendant-appellant.

Before: BROWNING, BRIGHT,* and TANG, Circuit Judge.

* Honorable Myron H. Bright, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

TANG, Circuit Judge:

Howard Weldon Martin appeals his jury convictions for conspiring to possess more than 100 grams of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a) and 846, and for aiding and abetting the possession of said methamphetamine with intent to distribute, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a). Martin argues duplicitous indictment, insufficiency of the evidence, and outrageous governmental conduct. We reverse both of his convictions for insufficiency of the evidence.

## BACKGROUND

In late September of 1991, Linda Innis gave the DEA information about a methamphetamine operation. Innis, at the time, was incarcerated and was about to be sentenced on petty theft charges. She hoped that giving such information would be taken into consideration by the sentencing judge. She informed Agent Scott that Howard Martin was involved in a methamphetamine operation and supplied Agent Scott with Martin's phone number. Unknown to Agent Scott, Innis told Martin that her "friend," Agent Garcia, the assigned undercover agent, buys pound quantities of methamphetamine and promised Martin sexual favors if he would help Garcia obtain methamphetamine.

On October 2, 1990, an investigation began and Agent Garcia met Martin at a Denny's restaurant. At that time, Martin stated he could sell Agent Garcia five pounds of methamphetamine for $11,000 per pound. Agent Scott then entered the picture by informing Martin that he would be acting on Agent Garcia's behalf to negotiate and purchase five pounds of methamphetamine. Three days later, Agent Scott again met Martin who now was accompanied by codefendant Edwin Jackson. During the discussion of a five-pound purchase, Jackson stated that they needed to see a photograph of the purchase money with a current edition of the local newspaper. Agent Scott contacted other DEA agents and had such a photograph sent to the restaurant. The photograph was given to Martin, who in turn gave it to Jackson. Jackson then left and was believed to have taken the photograph to a supplier named Carlos. While Martin and Agent Scott awaited Jackson's return, Martin told Agent Scott that he normally moved and sold methamphetamine in pound quantities. Martin also referred to one of the five pounds of methamphetamine as "amber glass," which meant 100% purity. Jackson returned and stated that he had given the photograph to "our guy." A dispute then arose as to the method of delivery.

Later that day, Martin told Agent Scott that his source supplying the one pound of amber glass insisted that delivery take place at his home, although his other source supplying the other four pounds of methamphetamine was ready to deliver. Agent Scott was then told to go to a Target store where he would at least receive the four pounds that were ready to go. At the designated Target store, Agent Scott was told that it would be another two hours. Agent Scott replied that the delay was unacceptable and that Martin contact him when delivery was ready. As Martin and Agent Scott departed company, Jackson approached Agent Scott and stated that he could obtain the methamphetamine much quicker and in a manner that Agent Scott wanted. Jackson requested that Agent Scott use the name "Tony" when contacting Jackson because Jackson, at that time, lived with Martin and did not want Martin to know he was dealing separately with Agent Scott.

On October 15, 1990, Jackson told Agent Scott that he had three or four different sources, one of which could provide the amber glass. One day later, Jackson informed Agent Scott that one of his sources was ready to deliver the five pounds of methamphetamine. Agent Scott was then introduced to Ernest Allen, one of Jackson's sources. Meanwhile, on October 31, 1990, Martin told Agent Garcia in a telephone conversation that he did not like Agent Scott and would only deal with Garcia. No other contact was made with Martin.

On November 13, 1990, Allen contacted Agent Scott and stated that he was ready to sell three or four pounds of methamphetamine. The next day, on November 14, Agent Scott contacted Allen and stated that he was ready to do a two-pound transaction.

It was agreed that Jackson and Allen would meet Agent Scott at a specified doughnut shop, Agent Scott would flash the purchase money, and they would all proceed to the supplier's house. It was later determined that Zita Cullinan was the owner of the house. Things went according to plan, and upon arrival at Cullinan's house, Allen entered the house while Agent Scott and Jackson waited outside. Allen came out of the house accompanied by Jesus Romero. Romero approached Agent Scott and produced one pound of methamphetamine. At that point, Jackson, Allen, Romero, and Cullinan were arrested. An additional pound of methamphetamine was found inside Cullinan's house. Martin was thereafter arrested and convicted by a jury for conspiracy to possess methamphetamine with intent to distribute. Martin was also convicted for possession of methamphetamine with intent to distribute under an aiding and abetting liability theory. Martin timely appeals.

## I. DUPLICITOUS INDICTMENT

■ We review de novo whether an indictment is duplicitous. *United States v. Yarbrough*, 852 F.2d 1522, 1530 (9th Cir.), *cert. denied*, 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988). "In reviewing an indictment for duplicity, our task is not to review the evidence presented at trial to determine whether it would support charging several crimes rather than one, but rather solely to assess whether the indictment itself can be read to charge only one violation in each count." *Id.* (quotation omitted).

■ In the present case, Count 1 of the indictment stated that "defendants JESUS ANTONIO ROMERO, EDWIN BOONE JACKSON, ERNEST EDWARD ALLEN, ZITA CULLINAN, and HOWARD WELDON MARTIN did knowingly and intentionally conspire together and with each other ... to possess, with intent to distribute, more than 100 grams of methamphetamine." The district court instructed the jury that "[t]o establish the existence of a single conspiracy, as charged in count 1, rather than multiple conspiracies, the government must prove that an overall agreement existed among the conspirators." We find that the

indictment charged but one overall conspiracy and is not duplicitous. *See United States v. Morse*, 785 F.2d 771, 774 (9th Cir.) (indictment not duplicitous where it charged but one single conspiracy), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2925, 91 L.Ed.2d 553 (1986).

## II. SUFFICIENCY OF THE EVIDENCE

### A. *Conspiracy Conviction as Charged in the Indictment*

"[I]f the indictment charges jointly tried defendants with participation in a single conspiracy, but the evidence reveals multiple, discrete conspiracies, such a variance of proof *may* be so prejudicial as to require reversal." *United States v. Kenny*, 645 F.2d 1323, 1334 (9th Cir.), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981). "The question of whether a single conspiracy has been proved, rather than multiple conspiracies, is a recurring one, which is essentially a question of the sufficiency of the evidence." *United States v. Bibbero*, 749 F.2d 581, 586 (9th Cir.1984), *cert. denied*, 471 U.S. 1103, 105 S.Ct. 2330, 85 L.Ed.2d 847 (1985). Therefore, the critical issue is " 'whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Bishop*, 959 F.2d 820, 829 (9th Cir.1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

■ To prove a conspiracy exists the government must prove three elements: (1) an agreement to commit an illegal act; (2) an overt act in furtherance of the illegal objective; and (3) a requisite intent to commit the underlying offense. *United States v. Penagos*, 823 F.2d 346, 348 (9th Cir.1987). The evidence clearly indicates that Martin conspired with Jackson but the indictment did not charge Martin for that conspiracy. Instead, the indictment charged Martin, Jackson, Allen, Romero, and Cullinan for one overall conspiracy.

The charged conspiracy takes the form of a wheel with Jackson being the hub and

Martin, Allen, Romero, and Cullinan being the spokes. To establish the overall conspiracy, the government must "supply proof that the spokes are bound by a rim." *Kenny,* 645 F.2d at 1335 (internal quotation marks omitted). In other words, the evidence must show that "there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy." *United States v. Kearney,* 560 F.2d 1358, 1362 (9th Cir.) (quotation omitted), *cert. denied,* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977). "It is sufficient to show that each defendant knew or had reason to know of the scope of the conspiracy and that each defendant had reason to believe that their own benefits were dependent upon the success of the entire venture." *Kenny,* 645 F.2d at 1335 (quotation omitted).

Based on the evidence here, a jury could reasonably have found that the overall conspiracy as charged in the indictment existed. However, that does not end our inquiry. The next question is whether the evidence connects Martin to that overall conspiracy. *See United States v. Brown,* 912 F.2d 1040, 1044 (9th Cir.1990) (after concluding that an overall conspiracy existed, the court found it necessary to determine whether the defendant was part of that conspiracy). In determining whether the necessary link exists, there must be evidence to show Martin's knowledge of and dependency on the overall conspiracy. *See id.* at 1044 ("While only slight evidence is needed to convict a person of knowing participation, we have emphasized the fact that there must be knowledge and dependency.").

The government argues that the evidence links Martin to the single overall conspiracy because Martin introduced Jackson to Agent Scott, and Jackson, in turn, involved Allen, Romero, and Cullinan in the transaction. We disagree. Martin was double-crossed by Jackson and had no idea that Jackson and others were dealing separately with Agent Scott. Martin's initial plan to obtain and supply Agent Scott with methamphetamine was not dependent on Jackson's double-dealing, and Martin did not benefit from the separate actions of Jackson, Allen, Romero, and Cullinan.

The evidence does not in any meaningful way connect Martin to the overall conspiracy, and therefore, we reverse Martin's conspiracy conviction as charged in the indictment on the ground of insufficient evidence.

### B. *Possession Conviction*

Martin also argues that the evidence does not support his possession conviction because he never possessed the methamphetamine seized during the arrests of Jackson, Allen, Romero, and Cullinan. Although Martin did not actually possess the methamphetamine, he may nevertheless be convicted for the substantive offense under two liability theories: (1) aiding and abetting under 18 U.S.C. § 2, and (2) coconspirator liability. *See United States v. Aichele,* 941 F.2d 761, 764 (9th Cir.1991) (conspirator is liable for all "foreseeable substantive offenses committed in furtherance of the conspiracy").

To convict Martin of possession under an aiding and abetting theory of liability, the evidence must show that Martin associated himself with the venture, "that 'he participate[d] in it as something he wish[ed] to bring about' ... [and that] 'he [sought] by his action to make [the venture] succeed.'" *United States v. Smith,* 832 F.2d 1167, 1171 (9th Cir.1987) (quoting *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949)).

The government has not put forth any evidence supporting Martin's possession conviction on an aiding and abetting theory. There is no evidence indicating that Martin intended or assisted Jackson, Allen, Romero, and Cullinan to possess methamphetamine. The government argues that Martin intentionally counseled, induced, and procured Jackson to obtain and provide five pounds of methamphetamine to undercover DEA agents. This argument is misplaced. Although Martin introduced Jackson to the DEA agents, Martin obviously did not intend or assist Jackson in double-crossing him by obtaining the methamphetamine with others behind his back.

Because the district court instructed the jury on coconspirator liability the government argues that we may affirm Martin's

possession conviction under *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Under *Pinkerton,* "each conspirator is liable for the criminal acts of his coconspirators as long as the following conditions are met: (1) the substantive offense was committed in furtherance of the conspiracy; (2) the offense fell within the scope of the unlawful project; and (3) the offense could reasonably have been foreseen as a necessary or natural consequence of the unlawful agreement." *United States v. Douglass,* 780 F.2d 1472, 1475–76 (9th Cir. 1986) (citations omitted).

The government argues that, under *Pinkerton,* Martin is liable for possession because Jackson, his coconspirator, committed the substantive offense. We disagree. The substantive offense committed by Jackson, Allen, Romero, and Cullinan was not committed in furtherance of the conspiracy between Martin and Jackson. The actions of Jackson, Allen, Romero, and Cullinan also were not reasonably foreseeable. Martin could not have reasonably foreseen that Jackson would double-cross him by carrying out the illegal venture with others behind Martin's back. The evidence thus does not support Martin's conviction for possession with intent to distribute methamphetamine.

CONCLUSION

Because we reverse Martin's conspiracy and possession convictions, we need not address Martin's claim of outrageous governmental conduct.

REVERSED.