24 F.3d 251
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Clifford James O'CONNOR, Defendant-Appellant.
 No. 91-50269.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 4, 1994.
Decided April 18, 1994.
 
 Before: BROWNING, PREGERSON, and BRUNETTI, Circuit Judges:
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant, Clifford James O'Connor ("O'Connor"), appeals his jury conviction, contending that there was insufficient evidence to convict him on a single conspiracy charge. We find that sufficient evidence supports his conviction, and therefore we affirm.
 
 
 3
 O'Connor is one of at least seventeen defendants indicted for participating in a large and lengthy conspiracy to distribute and possess cocaine. The facts regarding the conspiracy charge are centered around the dealings of Thomas Clifford Whitmore ("Whitmore").
 
 
 4
 The evidence showed that O'Connor was involved in Whitmore's organization throughout virtually the entire period of the charged conspiracy. In 1987, O'Connor picked up twenty kilograms of cocaine which had been supplied by Joseph Aldana ("Aldana") in Irving Harrinson's ("Harrinson") presence to Whitmore. Aldana and Harrinson remained suppliers to Whitmore's organization until the arrest of the defendants in August 1990. In June 1988, in a transaction involving three men from Detroit, Whitmore and three armed men, one of whom was someone named "Cliff," attempted to look for the three men from Detroit.
 
 
 5
 At trial, Lorenzo Myrick ("Myrick"), who was charged in the indictment as a member of the conspiracy, testified against O'Connor based on an agreement with the government, whereby the government filed a motion for a reduced sentence in return for Myrick's cooperation. Myrick testified that he purchased cocaine from O'Connor monthly from approximately 1988 to 1990. In August 1988, Myrick purchased three kilograms of cocaine from O'Connor and picked it up from Whitmore's home. In July 1989, Myrick purchased two kilograms from O'Connor. In mid-December 1989, Myrick met O'Connor at a gas station and bought one kilogram of cocaine. In mid-January 1990, Myrick purchased one kilogram from O'Connor and observed a Glock pistol on O'Connor. In late January or early February 1990, Myrick purchased on consignment three kilograms of cocaine from O'Connor; because Myrick was late paying O'Connor for the cocaine, O'Connor and several others threatened to kill Myrick and members of his family.
 
 
 6
 Officers executed several search warrants on August 17, 1990 and seized ammunition, cash, scales, cocaine, pagers, cellular telephones, and a cooking pot with cocaine base residue. When agents searched O'Connor's home on August 17, 1990 and discovered a Glock nine millimeter handgun, O'Connor admitted that it was his handgun.
 
 
 7
 In June and July 1990, pursuant to court authorization, wiretaps on Whitmore's residence and cellular telephones were initiated. These conversations revealed, through coded language, that Whitmore participated in narcotics trafficking. In a recorded conversation in February 1990, O'Connor and Myrick discussed money that Myrick owed to O'Connor for their last transaction for three kilograms of cocaine. In addition, these conversations, specifically one that occurred on July 19, 1990, indicated that Whitmore and Harrinson were arranging drug transactions. On August 10, 1990, a conversation between Whitmore and O'Connor indicated plans for another drug deal.
 
 
 8
 These facts evidencing O'Connor's participation in the overall scheme are sufficient for any rational juror to find the essential elements of a single conspiracy beyond a reasonable doubt. See United States v. Martin, 4 F.3d 757, 759 (9th Cir.1993). The nature of the scheme indicated a single conspiracy because O'Connor engaged in the overall operations of acquiring and distributing cocaine, evidencing an overall agreement. See United States v. Bibbero, 749 F.2d 581, 587 (9th Cir.1984) ("A formal agreement is not necessary; rather, the agreement may be inferred from the defendants' acts pursuant to the scheme, or other circumstantial evidence."), cert. denied, 471 U.S. 1103 (1985). Furthermore, the individuals involved either acquired or distributed cocaine as part of Whitmore's organization, and many participated for the entire duration of the conspiracy, evidencing a single conspiracy. See United States v. Arbelaez, 719 F.2d 1453, 1458 (9th Cir.1983) (Individual who was the center of activity "had a network of distributors selling whatever cocaine he was able to obtain from various suppliers. All appellants supplied [this individual] directly or indirectly."). O'Connor's role involved regular transactions that fluctuated in amount and frequency based on the available supply.
 
 
 9
 O'Connor's argument that the alleged inconsistent verdicts on O'Connor and his co-conspirators prevent finding a single conspiracy is without merit. See United States v. Hart, 963 F.2d 1278, 1281 (9th Cir.1992).
 
 
 10
 The frequent transactions involving various individuals linked to Whitmore are sufficient evidence to support O'Connor's conspiracy conviction for participating in a common scheme to profit from narcotics trafficking which did not end until Whitmore, O'Connor, and other defendants were arrested and indicted in August 1990.[1]
 
 
 11
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 We have received and considered O'Connor's pro se supplemental brief. We find that sufficient evidence supports his conviction under 18 U.S.C. Sec. 924(c); that the court's instructions to the jury were proper; and that the court properly sentenced him. Thus, none of O'Connor's claims merit a reversal of his conviction or sentence