24 F.3d 251
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Pedro MARTINEZ-TINOCO, aka Arturo Morales-Tsintzun,
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ismael DUARTE, Defendant-Appellant.
 Nos. 93-50054, 93-50410.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 8, 1994.
Decided April 26, 1994.
 
 1
 Before: WIGGINS and T.G. NELSON, Circuit Judges, and REED,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Ismael Duarte and Pedro Martinez-Tinoco, aka Arturo Morales-Tsintzun (Morales), appeal from their jury convictions for conspiracy to possess heroin with intent to distribute. Duarte also appeals from his conviction of possession of a firearm during the commission of a drug trafficking crime, and the 123-month sentence imposed under the Sentencing Guidelines. Morales also appeals his conviction for conspiracy to manufacture methamphetamine. We affirm.
 
 Duarte
 
 4
 Sufficient evidence supports Duarte's conviction. There was evidence that Duarte was involved in renting Apartment No. 3 several weeks before the April 15, 1992, drug transaction was to take place, and that the appearance of the apartment was consistent with a "stash house." When codefendant Tinajero and DEA agents arrived at the apartment complex on April 15, Tinajero went to Apartment 3 and asked for Duarte. Tinajero then reported to the agents that the heroin would arrive in approximately twenty minutes. A relatively short time thereafter, Duarte arrived at the apartment complex, met with Tinajero, and carried into Apartment 3 a folded newspaper (from December 1991) that appeared to conceal something. Tinajero then reported to the agents that the heroin had arrived, but that Duarte and codefendant Inzunza wanted to see the money first. When agents knocked at the door of Apartment 3 and announced themselves as police, Duarte and others inside the apartment fled. A search of the apartment revealed a digital electronic scale (later found to have heroin residue on it), and two handguns, one of which was found in the folded newspaper. Inzunza stated in his post-arrest statement that one of the handguns belonged to Duarte.
 
 
 5
 In addition, during Tinajero's negotiations with the agents for the sale of heroin, Tinajero stated in early April 1992 that his "Fallbrook" source was in Mexico, and reported back about a week later that his source was back and could supply four to five pieces of heroin. Duarte was in Mexico during this time period, and when he was arrested, he reported that he lived in Fallbrook. Finally, Duarte's testimony was less than credible. He did not remember the apartment manager (who testified that Duarte rented Apartment 3 in late March with a woman under the name of Luna); did not remember carrying a folded newspaper into Apartment 3; denied he told an agent in his post-arrest statement that he had rented Apartment 3; and denied that he had ever met or spoken with Tinajero about anything.
 
 
 6
 "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The evidence against Duarte was sufficient to meet this standard. Duarte's contention that his only involvement was to walk into Apartment 3 with a newspaper, and that there was no credible evidence implicating him as a source of the heroin, is not tenable. Apparently Duarte was not known to the DEA agents until the April 15 transaction. The heroin was never recovered in this case. However, the evidence outlined above was sufficient to permit a rational juror to find that Duarte knew of the overall conspiracy and intentionally acted to further its goals. "Having proved a conspiracy, the government need only prove beyond a reasonable doubt that [Duarte] had a slight connection to it." United States v. Torres-Rodriguez, 930 F.2d 1375, 1382 (9th Cir.1991). Duarte's activities on April 15, as well as the inferences to be drawn from other evidence against him, could be found a sufficient connection. Compare United States v. Ramos-Rascon, 8 F.3d 704, 706-11 (9th Cir.1993) (Government did not prove beyond a reasonable doubt that the defendants played a role in the conspiracy and that the nature of their role was as the Government described it); United States v. Bautista-Avila, 6 F.3d 1360, 1362-63 (9th Cir.1993) (case was "extremely close," but evidence held insufficient because Government did not show that defendants knew of the conspiracy or acted in furtherance of it); United States v. Martin, 4 F.3d 757, 759-60 (9th Cir.1993) (evidence did not connect defendant "in any meaningful way" to the conspiracy charged in the indictment).
 
 
 7
 In this case the evidence and inferences showed more than "mere casual association with conspiring people." Bautista-Avila, 6 F.3d at 1363 (internal quotation omitted). "When there is an innocent explanation for a defendant's conduct as well as one that suggests that the defendant was engaged in wrongdoing, the government must produce evidence that would allow a rational jury to conclude beyond a reasonable doubt that the latter explanation is the correct one." United States v. Vasquez-Chan, 978 F.2d 546, 549 (9th Cir.1992). The Government has done so in this case. Its efforts in this regard were assisted by Duarte's testimony, which was not credible.
 
 
 8
 The district court did not err in denying Duarte a new trial based on a letter submitted by a juror concerning the jury deliberations. "Jurors may not impeach their own verdict." United States v. Weiner, 578 F.2d 757, 764 (9th Cir.), cert. denied, 439 U.S. 981 (1978); see also Fed.R.Evid. 606(b); United States v. Williams, 990 F.2d 507, 513 (9th Cir.) (after jury is polled and discharged, individual juror cannot retract assent to verdict), cert. denied, 114 S.Ct. 333 (1993).
 
 
 9
 Duarte has not shown that he received ineffective assistance of counsel at sentencing because he has not demonstrated that his counsel's performance was deficient and that Duarte was thereby prejudiced. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Failure to challenge the base offense level of 26 because Duarte's participation in the conspiracy was minimal is hardly ineffective assistance of counsel. As the Government correctly points out, this lesser role contention is more properly directed at a role reduction under U.S.S.G. Sec. 3B1.2, not a reduction in the base offense level. Duarte did receive a two-level minor role adjustment.
 
 
 10
 Failure to argue that the coconspirators were incapable of producing the five ounces of heroin that were to be exchanged on April 15, 1992, does not constitute ineffective assistance of counsel in this case. The evidence was sufficient to support the determination of the base offense level. Tinajero had established himself as a legitimate and reliable source of heroin. As part of the negotiations, Tinajero revealed he would obtain five ounces of heroin from his source, to be sold at the source's location. Sufficient evidence existed demonstrating Duarte's participation in the conspiracy to sell that heroin. Furthermore, the burden is on Duarte to show both that he did not intend to produce and was not reasonably capable of producing the five ounces of heroin. United States v. Steward, 16 F.3d 317, 321-22 (9th Cir.1994). He did not meet this burden, but this cannot be attributed to ineffective assistance of counsel.
 
 Morales
 
 11
 The district court did not deprive the defendants of a fair trial by imposing procedures at the outset of trial that included an admonition to the four defense counsel not to ask repetitive questions, and a statement and explanation to the jury that testimony would not be reread. While Morales did not object to these procedures at trial, he argues that the trial court created such a hostile environment due to its concern with its heavy calendar and the time saving measures, that such objections would have been futile. Therefore, he argues, the court's "green light rules" should be reviewed for an abuse of discretion. See Henry v. Mississippi, 379 U.S. 443, 449 (1965). However, under either the plain error or abuse of discretion standard, the district court's actions do not provide a ground for reversal.
 
 
 12
 The trial court retains "wide latitude" to "impose reasonable limits" on cross-examination "based on concerns about, among other things, ... confusion of the issues, ... or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); see also Fed.R.Evid. 611. "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Van Arsdall, 475 U.S. at 679 (internal quotation omitted). Morales points to no specifics in the record that would reveal any unreasonable limitation of cross-examination of witnesses in this case. Nor does he respond to the Government's assertions that the record reflects that each counsel had wide latitude in conducting his own cross-examination bearing on his client's interests. The district court did not commit plain error or abuse its discretion in this instance.
 
 
 13
 The trial court also has wide discretion concerning the reading back of testimony. United States v. Ratcliffe, 550 F.2d 431, 434 (9th Cir.1976). The trial judge in Ratcliffe informed the jury in his opening remarks that he would not permit them to rehear testimony. Id. We found no abuse of discretion, explaining that while we "decline[ ] to subscribe to the wisdom of such a policy in all situations, such matters are left to the sound discretion of the district court." Id.
 
 
 14
 The judge's explanation to the jury did seem to misrepresent the court reporter's capabilities--certainly the testimony could be read back if necessary. However, given the wide discretion granted the trial court in decisions regarding the rehearing of testimony, id.; see also United States v. Nolan, 700 F.2d 479, 486 (9th Cir.) ("In general, rereading is disfavored because of the emphasis it places on specific testimony and the delay it causes in the trial."), cert. denied, 462 U.S. 1123 (1983), we cannot say that the trial court committed plain error or abused its discretion in this case. This case was relatively straightforward and the defendants have not pointed to any particularly difficult or confusing testimony where a "read back" would have been helpful.
 
 
 15
 The district court did not abuse its discretion in discharging Juror No. 2, the only Hispanic juror, and replacing him with an alternate. Juror No. 2 had been told three times the previous day that court would begin the next morning at 9:00 a.m. At 9:25 a.m., after the district court had the marshals check the hallway for Juror No. 2, the court replaced him. The record does not disclose that this juror ever appeared.
 
 
 16
 The trial court's need to manage juries and to set schedules can outweigh a defendant's right to a particular jury. United States v. Gay, 967 F.2d 322, 324 (9th Cir.), cert. denied, 113 S.Ct. 359 (1992). While the court in Gay specifically noted that the juror was not stricken "because of a single isolated incident of tardiness," id., this is not to say that a trial court's decision to strike a juror for such an incident would automatically constitute an abuse of discretion. Indeed, the Gay court cited with favor to United States v. Peters, 617 F.2d 503 (7th Cir.1980), in which the Seventh Circuit affirmed a juror substitution where the juror was ten minutes late for court. Gay, 976 F.2d at 325, citing Peters, 617 F.2d at 505 ("it is difficult to imagine a more complete disqualification than a failure to appear"). The replacement of Juror No. 2 was "peculiarly suited to the exercise of discretion by the trial judge." United States v. Echavarria-Olarte, 904 F.2d 1391, 1395 (9th Cir.1990).
 
 
 17
 We disagree with Morales' characterization of the prosecutor's examination of the confidential informant and certain statements in closing argument as vouching. See United States v. Molina, 934 F.2d 1440, 1444-45 (9th Cir.1991); see also United States v. Necoechea, 986 F.2d 1273, 1276-78 (9th Cir.1993). In any event, Morales did not object below, and we find no plain error.
 
 
 18
 As for the prosecutor's reference in closing argument that anyone who reads the newspaper "knows some of these things go on with methamphetamine," the Government correctly points out that the confidential informant testified on cross-examination that a newspaper article had identified the ingredients in methamphetamine and described how to make it. Therefore, the prosecutor's argument was premised on evidence already before the jury, and there was no error. In any event, the alleged error does not rise to the level of plain error.
 
 CONCLUSION
 
 19
 Sufficient evidence supports Duarte's conviction. The district court did not abuse its discretion in denying a new trial based on the letter it received from a juror. Duarte did not receive ineffective assistance of counsel at sentencing. Duarte's conviction and sentence are affirmed.
 
 
 20
 The district court did not commit plain error or abuse its discretion by telling the four defense counsel not to ask the same questions and by informing the jury prior to the start of trial that testimony would not be reread. The district court did not abuse its discretion in replacing the absent juror. The prosecutor did not improperly vouch for the confidential informant, nor did he refer to matters not in evidence in closing argument. Morale's conviction is affirmed.
 
 
 21
 AFFIRMED.
 
 
 
 *
 Honorable Edward C. Reed, Jr., Senior U.S. District Judge for the District of Nevada, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3