139 F.3d 909
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
United States of America, Plaintiff-Appellee,
v.
Robert C. VELTRI, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Vincent Dominic CACI, Defendant-Appellant.
 No. 96-50346, 96-50488.
D.C. No. CR-95-00347-JGD-5.
D.C. No. CR-95-00347-JGD-1.
 United States Court of Appeals, Ninth Circuit.
 Submitted** Feb. 3, 1998.
Decided Feb. 9, 1998.
 
 Appeal from the United States District Court for the Central District of California John G. Davies, District Judge, Presiding.
 Before PREGERSON, HALL, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Robert Veltri ("Veltri") and Vincent Dominic Caci ("Caci") appeal their convictions and sentences for conspiracy, mail fraud, and interstate transportation of stolen property, in violation of 18 U.S.C. §§ 2, 371, 1343, and 2314. The convictions arose out of a telemarketing scheme in which San Remo Sales ("San Remo") and later Nu Tech Limited ("Nu Tech") sold products to customers by telling them they would win one of five promotional awards if they made a purchase.
 
 
 3
 The district court had jurisdiction pursuant to 18 U.S.C § 3231. This court has jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We affirm.
 
 
 4
 * Veltri and Caci both argue that there was insufficient evidence that they were members of the conspiracy or that they knowingly participated in the fraud.
 
 
 5
 There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Ross, 123 F.3d 1181, 1183 (9th Cir.1997), cert denied, No. 97-6990, 1998 WL 6091 (U.S. Jan.12, 1998). The government is entitled to all reasonable inferences that may be drawn from the evidence. United States v. Vaughn, 797 F.2d 1485, 1489 (9th Cir.1986).
 
 
 6
 The essential elements of a conspiracy are: (1) an agreement to accomplish an illegal objective; (2) the commission of an overt act in furtherance of the conspiracy; and (3) the requisite intent necessary to commit the underlying offense. United States v. Thomas, 887 F.2d 1341, 1347 (9th Cir.1989). "Once the existence of a conspiracy has been shown, evidence establishing a defendant's slight connection with the conspiracy beyond a reasonable doubt is sufficient to convict the defendant of knowing participation in the conspiracy." United States v. Garza, 980 F.2d 546, 552 (9th Cir.1992).
 
 
 7
 * Viewing the evidence in the light most favorable to the government, there is ample evidence that Veltri was both a member of the conspiracy and that he knowingly participated in the fraud. Veltri was the sales manager in charge of all the salespeople at San Remo. He regularly monitored their sales calls and was aware of the misrepresentations they made. In addition, Veltri directed them to award only the worthless Hawaiian vacation package. The evidence was clearly sufficient to support the jury's finding that Veltri was a member of the conspiracy and that he knowingly participated in the fraud.
 
 B
 
 8
 There is sufficient evidence to support the jury's finding that Caci was a member of the conspiracy and intended to commit fraud. Caci was instrumental in starting San Remo. He used his connections with Promotions Unlimited to get start-up capital for San Remo, attended the business meetings, and negotiated all the necessary contracts for the new business. Once the business was up and running, Caci continued to be involved. He regularly visited the business, received cash payments from Joseph Caci, and bragged to his associates about how much money he was making on the business. The evidence was more than sufficient to support Caci's convictions.
 
 II
 
 9
 Both Veltri and Caci argue that Count One, the conspiracy charge, was duplicitous because it linked together two conspiracies, the San Remo conspiracy and the Nu Tech conspiracy.
 
 
 10
 Whether an indictment is duplicitous is a question of law reviewed de novo. United States v. Martin, 4 F.3d 757, 759 (9th Cir.1993). "In reviewing an indictment for duplicity, our task is not to review the evidence presented at trial to determine whether it would support charging several crimes rather than one, but rather solely to assess whether the indictment itself can be read to charge only one violation in each count." Id. (citation omitted). The fact that the indictment charges a single conspiracy to commit more than one offense does not make it duplicitous. Id.
 
 
 11
 While the indictment certainly could have separated the San Remo activities and the Nu Tech activities into two conspiracies, such a division was not required. Id. Instead, the indictment chose to charge but one overall, ongoing conspiracy encompassing all of the activities. A single conspiracy charge was certainly acceptable; Nu Tech was essentially an extension of San Remo under a different name employing an identical scheme, lead by the same people in the same offices to further their ongoing conspirational objectives. Furthermore, at the request of counsel for defendant Robert F. Thomas, the district court included an explanatory instruction. It was not duplicitous to charge the activities of these businesses as a single, ongoing conspiracy to defraud victims of money through telemarketing.
 
 III
 
 12
 Defendants Caci and Veltri argue that the district court erred in admitting evidence regarding prior telemarketing fraud committed by Promotions Unlimited and its members prior to San Remo's involvement.
 
 
 13
 Whether testimony was other crimes evidence within the meaning of Rule 404(b) is a question of law reviewed de novo. United States v.. Soliman, 813 F.2d 277, 278 (9th Cir.1987). "Evidence should not be treated as 'other crimes' evidence when 'the evidence concerning the ['other'] act and the evidence concerning the crime charged are inextricably intertwined." ' Id. at 279 (quoting United States v. Aleman, 592 F.2d 881, 885 (5th Cir.1979)). "In addition, [t]he policies underlying the rule are simply inapplicable when some offenses committed in a single criminal episode become 'other acts' because the defendant is indicted for less than all of his actions." Id. (quoting Aleman, 592 F.2d at 885); see also United States v. Williams, 989 F.2d 1061, 1070 (9th Cir.1993); United States v. Mundi, 892 F.2d 817, 820 (9th Cir.1989).
 
 
 14
 The evidence admitted at trial regarding Promotions Unlimited's prior fraudulent activities was "inextricably intertwined" with the charged conspiracy. The charged conspiracy included members of San Remo and Promotions Unlimited and alleged an agreement among them to create San Remo and defraud customers. Promotions Unlimited and its owners played a significant role in the alleged conspiracy--they helped San Remo set up business, provided start-up cash, salesmen, staff, and training, and handled the "back-end" of the business by supplying products and awards and contacting San Remo's customers. Considering Promotions Unlimited's substantial involvement in the charged conspiracy, we hold that evidence of Promotions Unlimited's telemarketing fraud prior to its creation of San Remo was inextricably intertwined with the charged conspiracy and provided the necessary context for the charged conspiracy. Williams 989 F.2d at 1070.
 
 IV
 
 15
 Caci and Veltri challenge three of the district court's sentencing decisions under the United States Sentencing Guidelines. The district court's interpretation of the sentencing guidelines is reviewed de novo. United States v. Barnes, 125 F.3d at 1289. We review the district court's factual findings for clear error. Id.
 
 
 16
 * Both Caci and Veltri argue that the district court erred by giving them a two-level adjustment pursuant to § 3A1.1 because the government did not establish that the victims were vulnerable.
 
 
 17
 Section 3A1.1 provides: "If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that the victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels." It is not necessary for defendants to specifically target a vulnerable victim for § 3A1.1 to apply. United States v. O'Brien, 50 F.3d 751, 756 (9th Cir.1994). The district court's finding of vulnerability is entitled to due deference. United States v. Caterino, 957 F.2d 681 (9th Cir.1992).
 
 
 18
 The district court did not clearly err in its factual finding that the victims were vulnerable. The evidence at trial showed that defendants purposely targeted the elderly. Where the age of a lead was unavailable, the sales staff targeted those individuals with "generational names" in the hopes that the person was older and thus more trusting and easier to convince. Of the victims who testified at trial, several of them had generational names and most were elderly and retired. The evidence is sufficient to support the district court's finding that an upward adjustment was merited based on the vulnerability of the victims.
 
 B
 
 19
 The district court enhanced Caci's base offense level under § 2F1 .1 based on the amount of loss resulting from his fraudulent activities. Caci contends that the district court erred in its calculation of loss pursuant to § 2F1.1.
 
 
 20
 Under § 2F1.1(a), a defendant is assigned a base offense level of six for offenses involving fraud and deceit. Barnes, 125 F.3d at 1290. This level is then increased under § 2F1.1(b)(1) based on the amount of loss attributable to the fraud. Id. The Sentencing Guidelines define loss as "the value of money, property, or services unlawfully taken." U.S.S.G. § 2F1.1, Application Note 7. The burden is placed upon the government to prove the loss by a preponderance of the evidence. Id. However, "the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2F1.1, Application Note 8; United States v. Watson, 118 F.3d 1315, 1319 (9th Cir.1997).
 
 
 21
 Caci was given a seven-level increase as proscribed by § 2F1.1(b)(1)(H) for losses greater than $120,000 but less than $200,000. This calculation was not clearly erroneous. The amount of money sent in by the victims totaled approximately $160,000. After subtracting the wholesale value of the products and awards purchased by San Remo, the amount remains well above $120,000.
 
 
 22
 Caci also argues that he should not be charged with the entire loss figure because of his minor role in the affairs of San Remo Sales. However, as discussed previously, Caci played a leadership role in the conspiracy for the duration of its existence; therefore the district court did not err in holding him accountable for the entire amount.
 
 C
 
 23
 Caci contends there was an insufficient factual basis to find that he was the leader or organizer of San Remo Sales, and that therefore, the district court erred in adding four levels for his role in the offense under § 3B1.1.
 
 
 24
 Caci was directly responsible for the formation of San Remo, and the evidence showed that he remained involved and profited from the business throughout its existence. The district court did not clearly err in finding that Caci was a leader or organizer of the business.
 
 
 25
 AFFIRMED.
 
 
 
 **
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3