**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Salvadore AGUIRRE, Defendant–Appellant.**

**United States Of America, Plaintiff–Appellee,**

v.

**Teodoro Rico Robles, Defendant–Appellant.**

Nos. 00–30073, 00–30112.
D.C. Nos. CR–98–00100–04–JDS, CR–98–00100–JDS.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 2001.

Decided Feb. 14, 2001.

Before RYMER, THOMAS, and MCKEOWN, Circuit Judges.

## MEMORANDUM[*]

Appellants Salvadore Aguirre ("Aguirre" or "Salvadore"[1]) and Teodore Rico Robles ("Robles") were each convicted of one count of conspiracy to distribute methamphetamine, 21 U.S.C. § 841(a)(1), 846; 18 U.S.C. § 2 ("Count I"), and one count of possession with intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1) ("Count II"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm in all respects.

### I.

Appellants object to Jury Instructions 5–8, which address venue. Though it is somewhat unusual for a district court to give venue instructions when the defendants do not challenge venue, the instructions were appropriate here because, throughout the trial, Appellants argued to the jury that there was no evidence that they were part of a conspiracy that took place in Montana or that they had ever set foot in that state prior to being transported there for trial. The district court thus was within its discretion in giving the instructions.

### II.

Appellants argue that the government did not meet its burden of establishing that they were party to a single drug

---

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. We sometimes refer to Salvadore Aguirre by his first name to distinguish him from his brother, Jorge Aguirre.

manufacturing and distribution conspiracy that stretched into Montana, rather than a different conspiracy based in and around Klamath Falls, Oregon. Whether there was a single conspiracy or multiple conspiracies is ultimately a question of sufficiency of the evidence.[2] *See United States v. Begay,* 42 F.3d 486, 501 (9th Cir.1994). Sufficiency of the evidence is evaluated under the standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979): the conviction stands if, viewing "the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Viewing the evidence under this standard, the evidence was sufficient for a rational trier of fact to conclude that Appellants were involved in a single drug manufacturing conspiracy in which methamphetamine was manufactured in California, driven to Oregon, and further distributed, including in Montana. "Evidence is sufficient to connect a defendant to a conspiracy if it shows that the defendant had knowledge of and participated in the conspiracy." *United States v. Duran,* 189 F.3d 1071, 1078 (9th Cir.1999) (citing *United States v. Vizcarra–Martinez,* 66 F.3d 1006, 1010 (9th Cir.1995)).

■ As to Salvadore Aguirre, the evidence demonstrated that he handled the money for the drug operation and that he knew drugs were being sold out of the house he shared with his brother Jorge. Large amounts of cash with drug residue on it were found on Salvadore's person and in his closet. When arrested, he was holding a rental receipt for a trailer under

which was hidden drug-packaging equipment and material on which his fingerprints were found. Salvadore admitted that he had seen six pounds of methamphetamine at this trailer and acknowledged that he had seen Alfredo Tovar pick up one to one-and-a-half pounds of methamphetamine at the house, and that this was the methamphetamine that Tovar had hidden in his car when he was pulled over in Montana. He also had knowledge of the jet skis which Tovar had obtained in Montana as payment for the drugs from Jesse Trevizo.

■ As to Robles, the evidence demonstrated that he was brought to Oregon at Jorge's request to join the methamphetamine operation and replace a member who had been arrested. Jorge taught him to cut, repackage, price, and sell methamphetamine. During the summer of 1998, Robles cut three pounds of methamphetamine with Jorge, turning it into nine to ten pounds of product; the two then repackaged the drugs. Robles would routinely obtain methamphetamine from Jorge in exchange for cash; Jorge would then use this cash to obtain more drugs.

This evidence is sufficient for a rational trier of fact to have concluded that Salvadore Aguirre and Robles "had knowledge of and participated in" the methamphetamine distribution conspiracy charged in Count I. *Duran,* 189 F.3d at 1078.

### III.

■ Appellants next assert that there was insufficient evidence to convict them on Count II, possession of methamphetamine with intent to distribute. The

---

**2.** Aguirre characterizes this argument as one about whether there was a prejudicial "variance" between the indictment and the proof at trial. Whether characterized as a question of variance or sufficiency of the evidence, the issues are the same. *See, e.g.,* United States v. Martin, 4 F.3d 757, 759 (9th Cir.1993); United States v. Arbelaez, 719 F.2d 1453, 1457 (9th Cir.1983).

methamphetamine at issue was that found in a car driven by Tovar on a highway outside Billings, Montana on August 18, 1998.

The evidence was sufficient for a rational trier of fact to convict under a *Pinkerton* theory. *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Tovar's distribution of the methamphetamine, which was transported from the operation's cutting and repackaging center in Oregon, was undertaken in furtherance of the single, multi-state conspiracy to distribute the drugs, and was within its scope. Also, Tovar's possession of the methamphetamine in Montana was reasonably foreseeable to Salvadore and Robles, both of whom were involved in the cutting and repackaging of methamphetamine in Oregon in the months preceding Tovar's arrest, with the knowledge that the drugs would be further distributed.

To sustain a conviction, it is not necessary that Appellants actually knew that Tovar would travel to Montana with the methamphetamine. *See United States v. Taren–Palma*, 997 F.2d 525, 530 (9th Cir. 1993) ("Every member of the conspiracy need not know every other member nor be aware of all acts committed in furtherance of the conspiracy.") (citing *United States v. Camacho*, 528 F.2d 464, 469–70 (9th Cir. 1976)) (overruled on other grounds by *United States v. Shabani*, 513 U.S. 10, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994)).

## IV.

■ Salvadore challenges his 180–month sentence on three grounds. First, he argues that the district court erred by declining to grant him a two-level downward adjustments for acceptance of responsibility under U.S.S.G. § 3E1.1. "Acceptance of responsibility under U.S.S.G. § 3E1.1 is a factual determination reviewed for clear error." *United States v. Thompson*, 80 F.3d 368, 370 (9th Cir.1996); *see also* U.S.S.G. § 3E1.1 Application Note 5 ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review."). The district court did not clearly err in declining to grant Salvadore the two-level adjustment under § 3E1.1 because, although he did acknowledge his involvement with the portion of the conspiracy operating in Oregon, he did not accept responsibility for distributing drugs in Montana.

■ Salvadore next argues that the district court erred in declining to give him a two-level downward adjustment for being a minor participant in the crime pursuant to U.S.S.G. § 3B1.2(b). A district court's determination that a defendant is a minor participant is reviewed for clear error. *See United States v. Williams*, 185 F.3d 945, 946 (9th Cir.1999) (per curiam). The burden is on the defendant to prove that he was a minor participant. *See id.*

Salvadore was not a minor participant because he played an important role in the conspiracy as the admitted "money man" for the operation. Also, he participated in the cutting and repackaging of a substantial quantity of methamphetamine. The district court did not err in concluding that Salvadore was not a minor participant.

■ Third, Salvadore argues that he was entitled to be sentenced under the "safety valve" provision of 18 U.S.C. § 3553(f). Salvadore was not entitled to relief because he did not "tell all." He admitted only that he "touched" the repackaging and cutting material found by the authorities, but did not detail the en-

tire extent of the operation. The district court did not clearly err in refusing to grant relief under the safety valve provision.[3]

## V.

■ Robles raises two additional objections to his conviction. First, he asserts that the special verdict form given to the jury for Count II impermissibly amended the indictment by broadening the charges. This contention misses the mark because the special verdict form, which identified the specific methamphetamine at issue (that found behind the taillights of Tovar's car in Montana), narrowed the charges instead of broadening them. Such narrowing is permissible under *United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985); *see also United States v. Fulbright,* 105 F.3d 443, 452 (9th Cir. 1997).

■ Robles also argues that the district court erred in admitting evidence collected in various searches in Oregon in the weeks following Tovar's arrest in Montana on August 18, 1998 because the arrest ended the conspiracy. There is no authority, however, for the proposition that the arrest of one member of a conspiracy necessarily signals an end to the entire conspiracy, or that officers may not continue to collect evidence proving the existence of a conspiracy after the conspiracy ended. The district court did not err in admitting evidence of the post-August 18 searches in Oregon.

## VI.

■ Robles, too, asserts that he was a minor participant. But Robles personally handled over five kilos of methamphetamine, more than many other participants in the drug operation. The evidence also established that Robles engaged in drug repackaging activity a number of times and that he possessed about $7,500 in drug-tainted cash. In sum, the evidence demonstrates that Robles was involved to a significant degree in the drug operation, including repackaging methamphetamine for sale. The district court did not clearly err in declining to classify him as a "minor participant" pursuant to § 3B1.2(b).

■ Lastly, Robles challenges the district court's determination that 5.8 kilos of meth were attributable to him. "The district court's factual findings in the sentencing phase are reviewed for clear error. *United States v. Buenrostro–Torres,* 24 F.3d 1173, 1174 (9th Cir.1994). The government must establish the quantity of drugs attributable to a member of a conspiracy by a preponderance of the evidence. *United States v. Petty,* 992 F.2d 887, 891 (9th Cir.1993)." *United States v. Vaandering,* 50 F.3d 696, 704 (9th Cir. 1995).

■ The government arrived at the 5.8 kilos figure by relying on Jorge Aguirre's testimony that (1) he supplied Robles with three to four ounces (85 to 113 grams)[4] of meth for 20 weeks, for a total of (at minimum) 1701 grams and (2) Robles helped him cut three pounds of meth into nine to ten pounds of mixture, at minimum 4,082 grams of mixture. Added together, this

**3.** In his reply brief, Salvadore also raises a challenge to his sentence based on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *United States v. Nordby,* 225 F.3d 1053 (9th Cir.2000), and *United States v. Garcia–Guizar,* 227 F.3d 1125 (9th Cir.2000). This challenge fails because he

was sentenced to 180 months (15 years), well below any of the statutory maximums of 20 years, 40 years, and life. Therefore, under *Garcia–Guizar,* he was not prejudiced, and thus is not entitled to relief.

**4.** One ounce equals 28.35 grams.

totals 5,783 grams.[5] Robles asserted in his brief that "it is unreasonable to find that [he] would have been able to sell and would have thereby received from Jorge 3 to 4 ounces of methamphetamine a week." But this is nothing more than a bald assertion. And, in fact, Debra Gheer testified that she bought three to six ounces of methamphetamine per week from Robles for two months, and Matthew Borner testified that he bought about two ounces from Robles. The district court did not err in determining the amount of drugs attributable to Robles.

AFFIRMED

---

**5.** The Probation Office actually calculated over 15 kilos, and the district court stated that such a figure was "justified," but ultimately used the more conservative number to sentence Robles.

