**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jimmie Ray DERINGTON,
Defendant–Appellant.**

No. 98–10514.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 5, 2000

Filed Oct. 20, 2000

Robert Rainwater, Assistant Federal Public Defender, Fresno, California, for the defendant-appellant.

Richard Cutler, Assistant United States Attorney, Fresno, California, for the plaintiff-appellee.

Before: NOONAN, THOMAS, and BERZON, Circuit Judges.

NOONAN, Circuit Judge:

Jimmie Ray Derington appeals his conviction of the theft of government property in violation of 18 U.S.C. § 641 and of the depredation of government property in violation of 18 U.S.C. § 1361. We affirm the judgment of the district court.

## FACTS

In July 1993 Eva Carver contracted with Derington to log her property, which consisted of three parcels within the Sequoia National Forest. Pursuant to state regulations, Derington filed for an exemption with the California Department of Forestry permitting logging of up to 10% of the dead, dying, or diseased trees on the Carver property. The exemption was granted. Derington also obtained a road use permit from the United States Forest Service and was informed by an officer of the Forest Service that the boundary of the Carver property was uncertain and that he should get a professional survey before beginning to log.

From 1972 to 1977, Derington had worked for the Forest Service, had been given training in surveying and running boundary lines, and had been promoted to supervisory forestry technician. Since 1977 he had conducted his own logging and reforestation business. He was familiar with the area in which the Carver property lay. He began logging the property in mid-September 1993. He had not obtained a professional survey. Eva Carver told him and his workers that the fence lines on the eastern border of Carver Camp were the boundary lines. It was commonly understood, however, that the fence lines were to pasture cattle, not demarcate the boundary.

In November 1993, Derington was informed by officers of the Forest Service that he had logged 30 trees illegally from the national forest. In January 1994, Derington hired a professional surveyor, Dee Jasper, to survey a Carver parcel, but quarreled with him when Jasper followed a survey made by the government in 1881. In the fall of 1994 Derington replaced Jasper with Albert Velasco; Derington also quarreled with him when he stood by the 1881 survey.

During the fall of 1994 Forest Service officers determined that Derington had logged in the national forest and taken 33 trees from it, attempting to hide the logging of three large trees by cutting them to the ground and burying the stumps contrary to custom that left one foot of growth visible. The Forest Service warned Derington not to commit additional trespasses. In February 1995 the Forest Service discovered Derington had taken 80 more trees from the national forest. The government then had the Bureau of Land Management make an official re-survey of the Carver property, which confirmed the validity of the 1881 survey. In view of this information and what the government now knew of Derington's operation, the government decided to prosecute him criminally.

## PROCEEDINGS

On January 9, 1997 Derington was indicted for the theft of timber worth more than $100; for willful injury and depredation of such timber; and for unlawfully cutting and stealing 179 trees; all such acts being committed in the Sequoia National Forest between November 17, 1993 and January 4, 1995.

The defense moved in limine to exclude testimony of two witnesses involved with the case who had agreed to testify and had

received sentences of probation. The district court denied the motion.

Derington was tried before a jury. The government sought to offer evidence that he had exceeded the limits set by his California exemption for cutting on the Carver property. The district court first ruled the evidence inadmissible and later informed counsel that the evidence was not "intertwined" with the federal case. The court, however, admitted the evidence under Fed.R.Evid. 404(b) to show Derington's intent and to disprove his claim of mistake. The evidence was used by the prosecutor in arguing to the jury, "How much did he cut? Well, he cut at least 50% on all the private land. Why again: greed. Again: market. Again, this shows his intent to take as much timber as he could take while the market's there."

In the government's trial brief, filed August 24, 1998, the government stated that it would present testimony that Derington had asked Nolan Fritz, an officer of the Forest Service, who had come out to where Derington was logging, "Who squealed on me? How did they find out?" The government had not disclosed its knowledge of such a conversation in its response, a year earlier, to a defense discovery motion. The government in its opening statement referred to the conversation and in the course of the trial elicited Fritz's testimony as to Derington's inquiries. On cross-examination Fritz testified that he had filed a report of this conversation. The defense moved to dismiss for prosecutorial misconduct. At a hearing on this motion the government reported that it had no written report but had learned of Fritz's recollection in March, 1998.

The district court ruled that the government had violated Fed.R.Crim.P. 16(a)(1)(A) by not disclosing the conversation to the defense. As a sanction, the court struck Fritz's testimony and instructed the jury to disregard it completely.

Derington requested the following instruction as to his state of mind regarding the depredation count:

> The term "willfully," as used in these instructions to describe the alleged state of mind of the defendant, means that he knowingly performed an act, deliberately and intentionally as contrasted with accidentally, carelessly, or unintentionally.

The court instead gave this instruction:

> The term "willfully" as used in these instructions to describe the alleged state of mind of the defendant, means that he performed an act deliberately and intentionally as contrasted with accidentally, carelessly, or unintentionally.

Derington was convicted of theft and of depredation of government property. He was sentenced to two years and nine months imprisonment, a fine of $100, three years of supervised release, and restitution of $309,400.

Derington appeals.

## ANALYSIS

*Bargain For Testimony.* Derington's attack on the plea bargain granted two witnesses in exchange for truthful testimony is defeated by *United States v. Smith,* 196 F.3d 1034, 1035 (9th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1440, 146 L.Ed.2d 328 (2000).

■ *The Rule 16 Violation.* Fed.R.Crim.P. 16(a)(1)(A) applies to written records the government knows, or with due diligence should know, contain the substance of relevant oral statements made "in response to interrogation by any person then known to the defendant to be a government agent." The government argues that Derington was not interrogated by Fritz. The point is plausible. Without deciding it, we turn to the issue raised by this appeal, whether the sanction was severe enough for what the district court found to be a violation.

The sanction was within the broad discretion of the district court. Fed. R.Crim.P. 16(d)(2); *see also United States v. Burgess,* 791 F.2d 676, 681 (9th Cir. 1986). There was no evidence that the violation was deliberate. The effect on the defense of not knowing earlier of Fritz's recollection was not catastrophic. The defense knew over a week before trial what Fritz was going to say. With this advance warning, Derington had time to prepare to impeach Fritz if he could. As it turned out, Fritz's testimony was struck—not a perfect remedy because jurors have memories that can't be wholly unglued, but sufficient to sanction the conduct of which the court found the government culpable.

■ *The Rule 404 Evidence.* "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion ..." Federal Rules of Evidence Rule 404(a). The exceptions enumerated to character evidence are not relevant here. The prosecutor's argument to the jury highlighting Derington's greed touches on a trait of character. As evidence was inadmissible to prove Derington was greedy, an argument based on his greed should not have been made. No objection, however, was taken to the argument.

■ What Derington did object to was the evidence of his illegal cutting on Carver's property, a misdemeanor under state law. Cal.Pub.Res.Code § 4601, 4584 (1984); Cal.Code Regs. tit. 14, § 1038 (1990). The crime was distinct from the theft or depredation of federal property. Morally, it was similar—an assault on the environment and, specifically, on trees governmentally protected from being converted into lumber. Rule 404(b) permits evidence not only of crimes but of "wrongs or acts" to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." There is, no doubt, a fine line between evidence proving character (inadmissible) and evidence proving matters like intent or lack of mistake (admissible). Rule 404 requires the court to draw the line. Here after discussion, hesitation, and renewed argument, the district court admitted evidence of Derington's bad acts on Carver's property to show his intent on the federal land. The district court informed the jury that it could only consider that evidence "as it bears on the defendant's intent, knowledge, absence of mistake, or accident and for no other purpose." Intent to violate a state regulation, however, is not the same as intent to steal or destroy. The evidence was not admissible to prove intent as it related to Derington's defense. *See United States v. Garcia-Orozco,* 997 F.2d 1302, 1304 (9th Cir.1991).

Having concluded that it was error for the district court to admit the evidence pursuant to Rule 404(b), we reverse only if the error was not harmless. *United States v. Brown,* 880 F.2d 1012, 1016 (9th Cir. 1989). Harmless error analysis focuses upon the likely impact of trial error in the context of what actually happened at trial. Given the instructions to the jury, we must presume that what actually happened was that the jury did *not* rely on the prior bad act evidence to prove motive or plan (since the district court expressly proscribed doing so), but may have relied upon it to prove that Derington made no mistake about who owned the trees. If, on the record as a whole, consideration by the jury of the evidence for that purpose would not have likely changed its decision, then the error was harmless. *See Brown,* 880 F.2d at 1016. We conclude that the evidence demonstrating that Derington knew the trees in question were on government land and nonetheless cut them down is extensive and strong. It is therefore unlikely that the jury relied on the prior bad act evidence to any significant degree in convicting Derington of the crimes charged. Because it is not probable that it affected the jury's guilty verdict, the error in admitting the prior bad act evidence was harmless.

*The Instructions On Mental State.* The district court's elimination, over Derington's objection, of the word "knowingly" from his proposed instruction on "willfully" in the charge on count two is pressed on this appeal. The instruction proposed by the defendant was taken from *Devitt, Blackmar, Wolff and O'Malley, Federal Jury Practice and Instructions,* 4th ed. § 17.05. By removing "knowingly," the defendant argues, "the instruction permits the jury to convict even if the defendant did not actually know the property was owned by the government."

This argument, now advanced, was not made to the trial court. Rather, the defendant's counsel had earlier stated to the court: "the government does not have to prove that it's the government's property." The court instructed the jury: "The government does not have to prove that the defendant knew that the property in question belonged to the government." There was no objection. Accordingly, we review Derington's contention under the criteria for plain error. *See United States v. McIver,* 186 F.3d 1119, 1130–31 (9th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1210, 145 L.Ed.2d 1111 (2000).

As the Supreme Court has made clear, while "willfully" in a statute is sometimes controlled by the context in which it appears, as a general matter in the criminal context it requires the government to " 'prove that the defendant acted with knowledge that his conduct was unlawful.' " *Bryan v. United States,* 524 U.S. 184, 192, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) (quoting *Ratzlaf v. United States,* 510 U.S. 135, 137, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994)). We have previously upheld jury instructions that did not define "willfully." *See United States v. Campbell,* 42 F.3d 1199, 1204–05 (9th Cir.1994). In the light of *Bryan* we hold that an instruction requiring knowledge of the unlawfulness of the act is necessary. Alternatively, the jury instruction that passed muster in *Bryan* is also acceptable:

A person acts willfully if he acts intentionally and purposely and with the intent to do something the law forbids, that is, with the bad purpose to disobey or to disregard the law. Now, the person need not be aware of the specific law or rule that his conduct may be violating. But he must act with the intent to do something that the law forbids.

524 U.S. at 189, 118 S.Ct. 1939. The instruction that was given in our case did not satisfy the criteria given in *Bryan.* The instruction was erroneous.

The government produced much evidence that Derington knew he had crossed over from Carver property to the national forest. We may dispose of the deficient instruction by harmless error analysis, if we find the error did not affect the outcome. Omission of an element of the crime in a jury instruction can be harmless only if it can be shown that the jury *necessarily* made the omitted finding. *United States v. Bancalari,* 110 F.3d 1425, 1430 (9th Cir.1997) (emphasis in original).

Instructions on count one were:

In order for the defendant to be found guilty of [violating § 641], the Government must prove each of the following elements beyond a reasonable doubt:

First, the defendant stole property of value with the intention of depriving the owner of the use or benefit of the property; and

Second, the property belonged to the United States.

If you decide that the defendant is guilty, you must then decide whether the Government has proved beyond a reasonable doubt that the value of the property was more than $100.

The instructions explicitly direct the jury that it must find that Derington "stole property" and did so "with the intention of depriving the owner of the use or benefit of the property." The instructions were sufficient to put at issue whether or not Derington had mens rea. Having found Derington guilty of count one, the jury

necessarily found that he knew he was acting unlawfully not only in stealing the property but in committing depredations upon it.

We reach this conclusion only after considering *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). *Morissette* requires that a violator of § 641 be shown to have mens rea; that is, that the violator knows that he is doing something unlawful. The instructions held to be defective in that case required the jury only to answer the question, Did the defendant intend to take the property? *Id.* at 275–76, 72 S.Ct. 240. Here the jury, convicting Derington of count one, found that he stole, that is knowingly appropriated, property of an owner who was other than himself. Any deficiency in the instruction on count two that resulted from a lack of mens rea instruction was, therefore, harmless.

AFFIRMED.