UNITED STATES of America,
Plaintiff–Appellee,

v.

Juan ROMERO, Defendant–Appellant.

No. 99–30319.

United States Court of Appeals,
Ninth Circuit.

Argued Jan. 11, 2001.

Submitted Feb. 19, 2002.

Filed March 5, 2002.

Anna M. Robinson, William C. Broberg, Siderius Lonergan, Seattle, WA, for the defendant-appellant.

Katrina C. Pflaumer, United States Attorney, Annette L. Hayes, Assistant United States Attorney, Seattle, WA, for the plaintiff-appellee.

Before McKEOWN, W. FLETCHER and RAWLINSON, Circuit Judges.

RAWLINSON, Circuit Judge.

Juan Romero ("Romero") was tried by jury and convicted of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(B) and § 846. Romero asserts that there was insufficient evidence to find that he was involved in a conspiracy. He also argues that the district court erred in admitting impermissible character evidence, failed to give a government agent jury instruction, and that the cumulative errors in this case warrant reversal. Finally, Romero contends that his sentence of ninety-two months is unconstitutional and should be vacated. We affirm.

In 1998, Bonnie Rivero ("Rivero") gave Detective Frank Cortez ("Cortez") information about a drug trafficking organization involving Romero. Rivero subsequently became a confidential informant for the government. Detective Cortez instructed Rivero to introduce him to Romero as a drug trafficker looking for a suppli-

er. In June 1998, Cortez and Romero were introduced and discussed a deal involving approximately five kilograms of cocaine, valued in excess of $100,000.

Romero and Detective Cortez made arrangements for Cortez to travel to the area of Yakima, Washington on June 12 to purchase cocaine from Romero and "the other people involved with him." The June 12 meeting took place, but no drug transaction occurred. Nevertheless, after June 12, Cortez and Romero continued to have phone conversations, discussed the drug transaction, and arranged a meeting.

On July 9, 1998, Cortez and Romero again met in Yakima for Cortez to purchase the five kilograms of cocaine. Enrique Alcantar ("Alcantar"), a confidential informant, accompanied Cortez on this trip and was introduced to Romero. Alcantar traveled with Romero to a farm to get the drugs while Cortez waited at a department store parking lot. While at the farm, Alcantar and Romero waited for an individual to meet them and deliver the cocaine, but once again, the drug transaction was not consummated.

Alcantar and Romero remained in contact with each other and had another meeting to effect the sale. During this second meeting between Alcantar and Romero, they traveled to another ranch to meet Roque Zapien ("Zapien"). Romero introduced Alcantar to Zapien as the "guy who is going to purchase the kilos." Zapien presented a kilogram of cocaine to Alcantar, but Alcantar was not prepared to pay for the cocaine at that time. Romero and Zapien argued about money that Romero owed Zapien. At that point, Zapien instructed Alcantar to contact Zapien directly and leave Romero out of the transaction.

Detective Cortez and Alcantar subsequently negotiated directly with Zapien, and purchased cocaine from Zapien on Au-

gust 13, 1998 and September 14, 1998. Romero was not involved in either of these transactions. Zapien was arrested on September 18, 1998 and Romero was arrested on September 21.

Romero was charged by superseding indictment with one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(B) and § 846. The indictment charged that Romero and Zapien were both members of the conspiracy.

During trial, Bonnie Rivero, the confidential informant, testified regarding her prior drug dealings with Romero. Rivero testified that she began selling drugs for Romero in 1998 and traveled with him approximately eight times to conduct cocaine deals. However, Romero testified that he had never been involved in any drug deals with Bonnie Rivero. He stated that his dealings with Detective Cortez and Alcantar had been part of a plan set up with Bonnie Rivero to steal money from the drug deal.

The jury returned a verdict of guilty against Juan Romero. A sentencing hearing was held on October 8, 1999 and the district court sentenced Romero to ninety-two months in custody. Romero timely appeals.

## I.  Conspiracy

■ Romero asserts that there was insufficient evidence of a conspiracy. "There is sufficient evidence to support a conviction if, in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wright*, 215 F.3d 1020, 1025 (9th Cir.), *cert. denied* 531 U.S. 969, 121 S.Ct. 406, 148 L.Ed.2d 313 (2000). Where, as here, a defendant fails to challenge the sufficiency of the evidence before the district court,

review is for plain error. *See United States v. Yossunthorn,* 167 F.3d 1267, 1270 n. 4 (9th Cir.1999).

■ "To establish a drug conspiracy, the government must prove: 1) an agreement to accomplish an illegal objective and 2) the intent to commit the underlying offense." *United States v. Iriarte–Ortega,* 113 F.3d 1022, 1024 (9th Cir.1997). To prove the requisite intent for the underlying offense of cocaine distribution, the government must present "clear" evidence of Romero's knowledge of the purpose behind the conspiracy. *See United States v. Hegwood,* 977 F.2d 492, 497–98 (9th Cir.1992).

■ Based on the evidence, a jury could reasonably have found that the overall conspiracy existed. Sufficient evidence was adduced at trial to establish the existence of the overall agreement to sell drugs to Detective Cortez and Alcantar and Romero's intent to further that agreement.

■ There is also sufficient evidence to connect Romero to the overall conspiracy. The government need not show an explicit agreement between Romero and the others. *See United States v. Montgomery,* 150 F.3d 983, 999 (9th Cir.1998). "It is sufficient to show that [Romero] knew *or had reason to know* of the scope of the conspiracy and ... *had reason to believe* that [his] own benefits were dependent on the success of the entire venture." *Id.* (emphasis in original).

Romero communicated with Cortez about the cocaine purchase, met with Alcantar several times, and traveled to the ranch to meet with Zapien about the drugs. It is of no consequence that Romero asserts that his intention was to steal money from the drug deal. Even assuming that this was his goal, he had knowledge of the conspiracy and depended on its success to further his goal of stealing the money. "Once the existence of a conspiracy is shown, the government need only prove a slight connection between the defendant and the conspiracy." *United States v. Matta–Ballesteros,* 71 F.3d 754, 765 (9th Cir.1995). Romero's connection to the overall conspiracy was sufficiently established and no plain error occurred.

Romero cites our decision in *United States v. Martin,* 4 F.3d 757 (9th Cir. 1993), to support his position. Martin was double-crossed when his partner, Jackson, arranged a secret drug deal with the undercover agent named Scott. Although Martin had introduced Jackson to Agent Scott, Martin had intended to supply Scott with the drugs himself. Martin had no idea that Jackson and others were dealing separately with the agent behind his back, and Martin did not benefit from that deal. After Jackson, Martin and the others were arrested, the indictment charged Martin with the conspiracy to possess and distribute methamphetamine that produced the Jackson–Scott purchase. *Id.* at 758–59. We reversed Martin's conviction. Because the evidence did not "in any meaningful way connect Martin to the overall conspiracy," there was insufficient evidence to indicate that he knew of and was dependent on the Jackson Scott conspiracy. *Id.* at 760.

Romero's case can be distinguished from *Martin.* In *Martin,* although a hub-and-spokes conspiracy was charged, no agreement going beyond any two individuals was proven. Martin had no contact with the other individuals charged, with the exception of Jackson. Although Martin may have conspired with Jackson, there was insufficient evidence to show that he was part of the overall conspiracy, because there was no evidence to establish that the overall conspiracy existed before Martin was double-crossed by Jackson. *Id.*

Unlike Martin, Romero was an active and willing participant in the charged con-

spiracy before Zapien circumvented Romero's further participation. The transaction that eventually took place between Zapien and the government agents was the very one Romero had conspired to develop. In contrast, Martin had neither knowledge of nor connection with the Jackson–Scott transaction; he presumably did not event want that drug transaction to occur. Romero's attempt to analogize his case to *Martin* therefore fails.

## II. Character Evidence

■■■ Romero asserts that his conviction was obtained using impermissible character evidence because the government introduced testimony from Bonnie Rivero concerning Rivero's previous drug-related activities with Romero. We review a district court's admission of evidence under Federal Rule of Evidence 404(b) for an abuse of discretion. *See United States v. Chea,* 231 F.3d 531, 534 (9th Cir.2000). If we conclude that a Rule 404(b) violation occurred, we reverse only if the error was not harmless. *See United States v. Derington,* 229 F.3d 1243, 1247 (9th Cir.2000).

■■■ Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion. *See* Fed. R. Evid. 404(a); *see also Derington,* 229 F.3d at 1247. However, Rule 404(b) permits evidence of prior wrongs or acts to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■■■ We have articulated a four-part test to determine the admissibility of evidence pursuant to Rule 404(b). Such evidence "may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3)

the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *Chea,* 231 F.3d at 534; *see also United States v. Howell,* 231 F.3d 615, 628 (9th Cir.2000), *cert. denied* —— U.S. ——, 122 S.Ct. 76, 151 L.Ed.2d 40 (2001); *United States v. Melvin,* 91 F.3d 1218, 1222 (9th Cir.1996). "If the evidence meets this test under Rule 404(b), the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403." *Chea* at 534 (quotations omitted).

In this case, Rivero's prior acts were admitted to show her knowledge of cocaine distribution methods and her earlier involvement with Romero in cocaine distribution. This evidence was relevant to Romero's defense that he did not intend to distribute cocaine, but rather to steal money. *See United States v. Jones,* 982 F.2d 380, 382 (9th Cir.1992). Since Rivero testified that her prior involvement with Romero occurred during the pendency of the conspiracy with which Romero is charged, the time period was not "too remote." This evidence also meets the "low threshold" of the third prong of our Rule 404(b) test: there was sufficient proof of the prior acts at issue because they were admitted through the testimony of Rivero, whose credibility was left to the jury. *See United States v. Houser,* 929 F.2d 1369, 1373 (9th Cir.1990).

Finally, the prior acts about which Rivero testified were clearly similar to the crime with which Romero was charged and convicted—i.e., conspiracy to distribute cocaine. The four-part test was therefore satisfied and the district court properly admitted the evidence under FED. R. EVID. 404(b).[1]

---

**1.** The probative value of the evidence was not outweighed by any prejudicial impact. Any

## III. Jury Instruction Regarding Government Agent

■ Romero's next assertion is that the district court committed reversible error by failing to instruct the jury that it could not convict him if it found that the only person with whom he conspired was a government agent. This assertion is based on *Sears v. United States*, 343 F.2d 139, 142 (5th Cir.1965), in which the Fifth Circuit established that, "as it takes two to conspire, there can be no indictable conspiracy with a government informer who secretly intends to frustrate the conspiracy." We have adopted this rule. *See United States v. de Bright*, 742 F.2d 1196, 1200 (9th Cir.1984); *see also United States v. Ritter*, 989 F.2d 318, 321 (9th Cir.1993) (holding evidence insufficient to support guilty verdict for conspiracy because the only co-conspirators were government agents).

■ When there is no objection to the jury instructions at the time of trial, we review for plain error. *See United States v. Anderson*, 201 F.3d 1145, 1148 (9th Cir.2000). Plain error will be found only where necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process. *See United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999), *cert. denied*, 531 U.S. 999, 121 S.Ct. 498, 148 L.Ed.2d 468 (2000).

Romero did not argue at trial that he only "conspired" with a government agent. In *United States v. Montgomery*, we held that a district court's failure to offer a *Sears* instruction sua sponte is not plain error, when a defendant does not rely on a *Sears*-type defense theory at trial, 150 F.3d 983, 996 (9th Cir.1998). Here, as in *Montgomery*, the district court's failure to give a *Sears* instruction was not plain error.

## IV. Chambers Conference

■ Romero's next assertion is that the district court erred in holding a conference in chambers regarding jury instructions because, although Romero's counsel was present at the conference, Romero himself was not present. Romero's counsel did not object to Romero's absence. Since this issue is being raised for the first time on appeal, we review only for plain error. *See United States v. Romero–Avila*, 210 F.3d 1017, 1021–22 (9th Cir.), *cert. denied*, 531 U.S. 899, 121 S.Ct. 233, 148 L.Ed.2d 167 (2000).

Federal Rule of Criminal Procedure 43(a) provides that "[t]he defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the empaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule." One exception to the presence requirement is that "[a] defendant need not be present ... [at] a conference or hearing upon a question of law." FED. R. CRIM. P. 43(c)(3). We need not decide whether the hearing was a "stage of the trial" under Rule 43(a) because even if it was, Romero's absence falls within the Rule's exception. *See United States v. Sherman*, 821 F.2d 1337, 1339 (9th Cir. 1987) (holding that "a hearing outside the presence of the jury concerning the selection of jury instructions is a 'conference or argument upon a question of law' under FED. R. CRIM. P. 43(c)(3)," which does not require the defendant's presence).

possible prejudicial impact of the testimony was lessened by the court's limiting instruction. *See Dubria v. Smith*, 224 F.3d 995, 1002 (9th Cir.2000), *cert. denied*, 531 U.S.

1148, 121 S.Ct. 1089, 148 L.Ed.2d 963 (2001) (holding a cautionary instruction to the jury is ordinarily presumed to have cured prejudicial impact).

The challenged conference was a meeting between the district court judge and counsel to discuss the jury instructions the court would give at the end of trial. The judge's decision to discuss jury instructions with counsel in the absence of the defendant was not error. *Id.* "A defendant does not have a federal constitutional or statutory right to attend a conference between the trial court and counsel concerned with the purely legal matter of determining what jury instructions the trial court will issue." *United States v. Graves,* 669 F.2d 964, 972 (5th Cir.1982). Since Romero's presence was not required at the conference in chambers, and his attorney was present to represent his interests, no plain error occurred in this case.

### V. Cumulative Error

Romero contends that the cumulative effect of the district court's errors warrant the reversal of his conviction. Having found no error in the district court's rulings, there is no cumulative error. *See United States v. Easter,* 66 F.3d 1018, 1023 (9th Cir.1995); *see also United States v. Gutierrez,* 995 F.2d 169, 173 (9th Cir.1993).

### VI.  21 U.S.C. § 841(b)

█ Romero's final contention is that his conviction must be reversed because 21 U.S.C. § 841(b) was rendered unconstitutional by the Supreme Court in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and by our decision in *United States v. Nordby,* 225 F.3d 1053 (9th Cir.2000). Romero's position is foreclosed by *United States v. Buckland,* 277 F.3d 1173 (9th Cir.2002) (en banc), where we upheld the constitutionality of 21 U.S.C. § 841, thereby overruling *Nordby.*

As in *Buckland,* and based on the judge's calculation of drug amounts, Romero was sentenced under 21 U.S.C. § 841(b)(1)(B) and § 846 for conspiring to distribute a controlled substance, in this case cocaine. Since the jury made no finding as to drug quantity, Romero's sentence should have been computed pursuant to 21 U.S.C. § 841(b)(1)(C), which provides for a statutory maximum penalty of twenty years for offenses involving an unspecified amount of cocaine. Romero was sentenced to ninety-two months in prison. This sentence is significantly less than the maximum sentence of twenty years to which Romero was exposed. *United States v. Buckland,* 277 F.3d at 1186. The judge's finding, based on a preponderance of the evidence, that Romero possessed a specified quantity of cocaine, did not affect his sentence.

The district court committed no reversible error in this case. Romero's conviction and sentence are AFFIRMED.