**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Antonio OCEGUERRA–AGUIRRE,**
**Defendant–Appellant.**

No. 02–50321.
D.C. No. CR–01–02388–BTM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 2003.

Decided July 25, 2003.

Before THOMAS and PAEZ, Circuit Judges, and REED,* District Judge.

## MEMORANDUM**

Appellant Antonio Oceguerra–Aguirre ("Oceguerra") appeals his conviction for importing marijuana in violation of 18 U.S.C. §§ 952 and 960 and possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) on the grounds that: (1) the district court improperly denied Oceguerra's suppression motion because there was not enough evidence to demonstrate reasonable suspicion; (2) the district court improperly admitted Treasury Enforcement Communication System ("TECS") evidence; (3) the government violated Fed.R.Crim.P. 16 by failing to disclose that its expert

---

* The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

would unseal marijuana samples at trial; (4) the prosecutor committed misconduct during closing arguments; and (5) the statutes of conviction, 21 U.S.C. §§ 841 and 960, are facially unconstitutional. The parties are familiar with the facts such that we need not repeat them. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## I. Motion to Suppress

We review the district court's decision denying a motion to suppress de novo. *United States v. Percy*, 250 F.3d 720, 725 (9th Cir.), *cert denied*, 534 U.S. 1009, 122 S.Ct. 493, 151 L.Ed.2d 405 (2001). The specific question of whether reasonable suspicion existed under given facts is a legal conclusion also subject to de novo review. *See United States v. Arvizu*, 534 U.S. 266, 275, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (affirming de novo review as proper standard). Any underlying factual findings are reviewed for clear error. *Percy*, 250 F.3d at 725.

Although the district court ruled that a border search that involved the removal of a gas tank from a vehicle was routine, the parties agree that subsequent authority, *United States v. Molina–Tarazon*, 279 F.3d 709, 717 (9th Cir.2002), which held that such searches are non-routine, controls. Oceguerra's argument that the court's alternative holding that there was sufficient evidence of reasonable suspicion to justify the search even if it was non-routine was advisory and, thus, unlawful, is without merit. *See Flast v. Cohen*, 392 U.S. 83, 96–97, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

In order to justify the non-routine border search that occurred here, the government was required to prove that its agents had reasonable suspicion prior to performing the search of Oceguerra's vehicle. *See United States v. Bravo*, 295 F.3d 1002,

1008 (9th Cir.2002). The Supreme Court recently emphasized that courts reviewing reasonable suspicion determinations must look at the "totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273. A court may not subtract evidence from the reasonable suspicion calculus merely because it is not completely probative or because it would be insufficient proof of reasonable suspicion when considered alone. *Id.* at 274.

█ Describing the amount of evidence as "overwhelming," the district court held that there was sufficient proof of reasonable suspicion. We agree with this conclusion. The district court correctly allowed a customs inspector to testify as to whether the canine enforcement dog's reaction to Oceguerra's vehicle was significant to him even though he wasn't qualified as a Canine Enforcement Officer. The inspector's experience further bolsters this conclusion, *see United States v. Colin*, 314 F.3d 439, 442 (9th Cir.2002), and although the statements could be classified as hearsay, the district court did not err in considering the evidence during a motion to suppress hearing. Fed.R.Evid. 104(a); *United States v. Whitten*, 706 F.2d 1000, 1019 (9th Cir.1983).

Similarly, it was appropriate for the district court to take Oceguerra's nervousness into consideration, *see United States v. Chavez–Valenzuela*, 268 F.3d 719, 726 (9th Cir.2001), *amended by*, 279 F.3d 1062 (9th Cir.2002), just as it was appropriate for the district court to consider evidence regarding marks on Oceguerra's vehicle indicating that the gas tank had been removed recently. *See Bravo*, 295 F.3d at 1008. In both contexts, the inspector's experience was relevant to the observations made. *See Colin*, 314 F.3d at 442.

In sum, the district court did not err in its reasonable suspicion conclusion. When the evidence of the dog alert, the shiny bolts and tool marks indicating that the gas tank was recently removed, Oceguerra's nervousness, and the inspector's relevant experience is taken together, as required under *Arvizu,* we agree that the district court that there existed a particularized and objective basis upon which the detaining officer could reasonably suspect legal wrongdoing. *See Bravo,* 295 F.3d at 1008; *Molina–Tarazon,* 279 F.3d at 717–18. We thus affirm the district court's denial of Oceguerra's motion to suppress.

## II. TECS Evidence

Next, Oceguerra argues that the district court erred by admitting TECS evidence showing that Oceguerra's vehicle crossed the border from the United States into Mexico on the day he was arrested and that the same vehicle crossed from Mexico into the United States seven times in the three months preceding his arrest.

### A. Rule 404(b)

█ A trial court's decision to admit evidence of other acts pursuant to Fed. R.Evid. 404(b) is reviewed for abuse of discretion. *United States v. Romero,* 282 F.3d 683, 688 (9th Cir.), *cert. denied,* 537 U.S. 858, 123 S.Ct. 228, 154 L.Ed.2d 96 (2002). Whether or not evidence falls within the scope of the rule, however, is a question of law reviewed de novo. *United States v. Smith,* 282 F.3d 758, 768 (9th Cir.2002). If the trial court abuses its discretion by admitting other act evidence, the decision will be reversed only if the error was not harmless. *Romero,* 282 F.3d at 688.

We apply a four-part test to determine the admissibility of 404(b) other act evidence. *Id.* The evidence can be admitted if: "(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *Id.* (quoting *United States v. Chea,* 231 F.3d 531, 534 (9th Cir.2000)). If the evidence meets this test, the court must then conduct an analysis under Fed. R.Evid. 403 to determine whether the probative value of the evidence is substantially outweighed by its prejudicial effect. *Id.*

At trial, a customs inspector testified that Oceguerra said he had been in Mexico for only three hours on July 7, 2001, the day he was arrested. The government offered TECS evidence contradicting Oceguerra's statement, which showed that Oceguerra's vehicle entered Mexico at 6:14 a.m. on July 7 and was exiting at 6:47 p.m. when Oceguerra was arrested. Oceguerra concedes that this particular piece of evidence was inextricably intertwined with the charged conduct, *see United States v. Williams,* 291 F.3d 1180, 1189 (9th Cir. 2002), and was properly admitted.

Oceguerra's theory at trial was lack of knowledge. He claimed to have been ignorant of the marijuana in his gas tank. A customs inspector testified at trial that Oceguerra was acting nervous when he questioned Oceguerra at the border. The court allowed the government to introduce the TECS evidence under Rule 404(b) to show that Oceguerra should not have been nervous because he had crossed the border many times and was familiar with the process. The court found that an inference could be drawn between Oceguerra's nervousness, and his alleged knowledge of the marijuana.

Admitted for this purpose, the TECS evidence showing Oceguerra's prior border crossings was not inextricably intertwined with the crime charged. *Williams,* 291 F.3d at 1189. Rather, because it was in-

troduced to show that Oceguerra did some act in the past that was relevant to the crime charged, the TECS evidence was other acts evidence subject to Rule 404(b)'s four-part test.

We are doubtful that the TECS evidence, offered for this purpose, met Rule 404(b)'s test. The government's reasoning requires too many tenuous inferential steps. First, the government assumes that people who frequently cross the border become familiar with the process and are therefore no longer nervous when crossing. Second, it assumes that because Oceguerra was familiar with crossing the border, his nervousness must have resulted from something else, namely the marijuana in his gas tank. There are numerous reasons, however, why an individual might be nervous when crossing the border regardless of whether he or she is familiar with the process. The fact that Oceguerra may have crossed the border on previous occasions says little about why he exhibited signs of nervousness on the day he was arrested. On the issue of nervousness, then, the TECS evidence likely did not prove a point material to the case, *see Romero,* 282 F.3d at 688, and did not meet our Rule 404(b) test.

■ Nonetheless, the district court also admitted the TECS evidence for an additional, relevant purpose. Throughout its opening statement, the defense explained that Oceguerra continually experienced mechanical difficulties with the vehicle after buying it but was unable to locate or fix the problems. The court ruled that the TECS evidence could be introduced to rebut this argument by showing that the vehicle was capable of making long distance trips from Los Angeles to Mexico. Because a reasonable inference could be drawn that if the vehicle was capable of making these trips it must have been functioning properly, the evidence was not ad-

mitted to show that Oceguerra committed some prior act relevant to the crime charged. *See United States v. Sanchez–Robles,* 927 F.2d 1070, 1078 (9th Cir.1991). Therefore, it was not subject to the restrictions of Rule 404(b).

Consequently, although it may have been improper to admit the TECS evidence on the issue of Oceguerra's nervousness, the district court's ruling that the evidence could be offered to show that the vehicle was operable was not erroneous. Also, the court's limiting instruction insured that, in accordance with Rule 403, the probative value of the evidence was not outweighed by its prejudicial effect. *See Romero,* 282 F.3d at 688 n. 1 ("Any possible prejudicial impact of the testimony was lessened by the court's limiting instruction."); Fed.R.Evid. 105.

#### B.  Rule 803(8)

■ The district court also ruled that the TECS evidence was admissible as a public record under the hearsay exception in Fed.R.Evid. 803(8). TECS reports can be admitted under Rule 803(8) unless there is some indication of a lack of trustworthiness. *United States v. Orozco,* 590 F.2d 789, 793–94 (9th Cir.1979). Although Oceguerra argued at trial that the TECS reports were unreliable because they showed the vehicle crossing the border into the United States on the same day, one minute apart, testimony at trial showed that the two entries reflected entries of the same plate by two separate inspectors during a shift change. In addition, contrary to Oceguerra's assertions, the district court correctly reasoned that a temporary disruption in the function of the TECS system would not cast doubt on the veracity of the TECS records at issue; that the TECS occasionally goes offline does nothing to show the record of Oceguerra's vehicle's actual crossings of the bor-

der was unreliable. As Oceguerra failed to seriously call into doubt the trustworthiness of the TECS reports, they were properly admitted under Rule 803(8).

■ In addition, Oceguerra's claim that the testimony of Agent Morgan constituted undisclosed expert testimony has no merit. Normally, documents falling under the public records exception are presumed to be trustworthy, and the burden is on the party challenging the records to establish untrustworthiness. *United States v. Loyola–Dominguez*, 125 F.3d 1315, 1318 (9th Cir.1997). If questions are raised about the manner in which the records were made or kept, however, a custodian or other qualified witness may have to testify to that end. *See* 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 803.10[2] (Joseph M. McLaughlin ed., 2d ed.2003).

Oceguerra directly questioned the reliability of the TECS evidence, challenging the manner in which the information was recorded. Agent Morgan merely laid a proper foundation for the recording of the data when he testified from his personal knowledge as a custodian of the TECS records. This was not undisclosed expert testimony.

### III. Rule 16

Oceguerra next contends that the government violated Federal Rule of Criminal Procedure 16 by presenting evidence of the marijuana samples allegedly seized and by allowing its valuation expert to touch and to feel the samples without providing this information to Oceguerra in its Rule 16(a)(1)(E) [1] expert summary disclosure. "We review de novo the district court's rulings on the scope of its authority to order discovery under Federal Rule of

Criminal Procedure 16." *United States v. Mendoza–Paz*, 286 F.3d 1104, 1111 (9th Cir.), *cert. denied*, 537 U.S. 1038, 123 S.Ct. 573, 154 L.Ed.2d 459 (2002). "[A] violation of Rule 16 does not itself require reversal, or even exclusion of the affected testimony." *United States v. Figueroa–Lopez*, 125 F.3d 1241, 1247 (9th Cir.1997). Rather, a defendant must demonstrate prejudice to substantial rights to justify reversal for violations of discovery rules. *Id.*

■ The district court did not err in admitting the samples of marijuana. Oceguerra had sufficient notice that the samples would be used at trial because the government disclosed that its chemist would testify to the consistency and weight of the contraband sampled and because the government listed the bucket with samples as an exhibit on its exhibit list. Although Oceguerra objected to admission of the bucket and the unsealed samples, the district court did not err when it overruled the objection on the basis that Oceguerra could have inspected the sample had he requested to do so earlier.

Nor was there a violation of Rule 16(a)(1)(E), which required that the government provide a summary of the opinions of its experts to be disclosed at trial, with respect to the testimony of the government's valuation expert, Agent Manglos. Despite Oceguerra's assertions to the contrary, Agent Manglos did not perform an improper "experiment" with the samples outside the scope of the expert summary disclosure. Although the government placed the marijuana samples before Agent Manglos and gave him an opportunity to "look at, smell, touch, and feel" the contents inside, the district court, sustaining Oceguerra's objection, did not allow

---

**1.** Rule 16(a)(1)(E) was relettered and is now found at Rule 16(a)(1)(G). Fed.R.Crim.P. 16(a)(1)(G) (Supp.2003). Because this change occurred after the parties briefed this appeal, we refer to the rule under its former letter, Rule 16(a)(1)(E), to avoid confusion.

Agent Manglos to give any testimony with regard to this examination. The district court also gave a limiting instruction to the jury.

Moreover, Oceguerra also has not demonstrated the requisite degree of prejudice to support reversal. *Id.* Oceguerra does not explain how Agent Manglos's examination of the marijuana was prejudicial. In addition, that the district court sustained the objection and gave a limiting instruction with regard to the government's questions removes any suspicion of prejudice. *See United States v. Sarkisian,* 197 F.3d 966, 989 (9th Cir.1999) (sustaining objection renders any error harmless); *Doe ex rel. Rudy–Glanzer v. Glanzer,* 232 F.3d 1258, 1270 (9th Cir.2000) (strong presumption that juries follow curative instructions). Therefore, the district court made no error with regard to its admission and treatment of the marijuana samples. *Mendoza–Paz,* 286 F.3d at 1111.

## IV. Prosecutorial Misconduct

Oceguerra also asserts that the prosecution committed misconduct during its closing argument by implicating Oceguerra as being a member of a drug-smuggling organization. Claims for prosecutorial misconduct are reviewed for abuse of discretion when the district court overrules an objection to a closing argument. *United States v. Cooper,* 173 F.3d 1192, 1203 (9th Cir. 1999).

■ Oceguerra's general defense theory was lack of knowledge. During her closing argument, the prosecutor said that Oceguerra's theory could only be believed if one of two events took place: (1) Oceguerra purchased the vehicle with the marijuana already in the gas tank; or (2) another person stole the vehicle and put the marijuana in the gas tank without Oceguerra's knowledge. Regarding the latter, the prosecutor explained that drug smuggling is a business, and that a reasonable drug smuggler would not steal a car and plant drugs in it. Instead, the prosecutor opined, the reasonable smuggler would tell the driver the car contained drugs. The prosecutor attacked Oceguerra's theory of the case, and did not argue or imply that he was part of a larger drug organization. To the extent that it may have been improper for the prosecutor to refer to drug smuggling as a business, the court did not abuse its discretion by allowing the argument. It was made in passing and did not prejudice Oceguerra.

## V. Constitutional Challenges

Finally, Oceguerra challenges the facial constitutionality of 21 U.S.C. §§ 841 and 960 pursuant to *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We have directly addressed, and foreclosed, Oceguerra's argument that sections 841 and 960 are facially unconstitutional in light of *Apprendi. United States v. Buckland,* 289 F.3d 558 (9th Cir.) (en banc) (holding § 841 facially constitutional), *cert. denied,* 535 U.S. 1105, 122 S.Ct. 2314, 152 L.Ed.2d 1067 (2002); *Mendoza–Paz,* 286 F.3d at 1109–10 (relying on reasoning in *Buckland* to hold § 960 facially constitutional). Sections 841 and 960 are facially constitutional.

AFFIRMED.