**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Owen R. FOX, aka Seal C,
Defendant—Appellant.**

**United States of America,
Plaintiff—Appellee,**

v.

**Douglas S. Cross, Defendant—
Appellant.**

Nos. 02–50022, 02–50148.
D.C. Nos. CR–99–00904–CBM–
3, CR–99–00904–CBM–01.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 2004.

Decided Jan. 6, 2005.

Miriam A. Krinsky, AUSA, Pamela L. Johnston, Esq., Jeffrey B. Isaacs, Esq.,

USLA—Office of the U.S. Attorney Criminal Division, Los Angeles, CA, for Plaintiff–Appellee.

Lathrop & Villa, Torrance, CA, James M. Crawford, Esq., Orange, CA, for Defendant–Appellant.

Before B. FLETCHER, NOONAN, and PAEZ, Circuit Judges.

## MEMORANDUM *

Appellants Douglas S. Cross and Owen R. Fox were convicted of conspiracy to commit securities fraud and mail fraud, 18 U.S.C. § 371; securities fraud and aiding and abetting thereof, 15 U.S.C. §§ 78j(b), 78ff(a), 17 C.F.R. § 240.10b–5, and 18 U.S.C. § 2; mail fraud, 18 U.S.C. § 1341 and 1342; conspiracy to commit international money laundering, 18 U.S.C. § 1956(h); and international money laundering, 18 U.S.C. § 1956(a)(2)(A). Fox also was convicted of obstruction of justice, 18 U.S.C. § 1503. They now appeal.

### I. Cross's Appeal

Cross alleges that the admission of the testimony of FBI Special Agent Steve Eidson, an accountant specializing in white collar crime, violated the helpfulness requirement of Federal Rule of Evidence 702 and that he did not qualify as a summary witness under Rule 1008. While neither party disputes Eidson's qualifications as an expert, Cross contends Edison's testimony consisted entirely of a summary and inferences that the jury could have reached independently of expert testimony and that the testimony therefore violated the

---

helpfulness requirement. *See U.S. v. Benson*, 941 F.2d 598, 605 (7th Cir.1991) (holding IRS agent testimony was in violation of helpfulness requirement where "[the agent] had nothing to offer on this question that would assist the jury's understanding of the issue"). Cross further argues that Eidson's testimony is duplicative and therefore prejudicial under Federal Rule of Evidence 403. Cross's counsel did not make any objections at trial, so we review for plain error. *See* Fed.R.Crim.P. 52(b).

■ We must consider Edison's testimony not only as summary but as that of an expert, as Eidson testified about conclusions he drew from the data. The district court did not plainly err in allowing both Eidson's summary testimony and expert conclusions. The funds used by the defendants flowed through at least twelve separate accounts. In formulating his testimony, Eidson reviewed approximately a hundred banker's boxes containing several thousand pages of records. The tracing of money from the individual investors to their ultimate disposition is anything but simple. The analysis is not, as Cross contends, "something which Eidson was no more qualified to do than the jury." Instead, the district court permissibly relied on Eidson's testimony as that of an expert able to make these complex transactions more accessible to the jury through both summary and analysis.

With respect to Cross's conviction itself, we affirm.

## II. Fox's Appeal

### a. Sufficiency of the Evidence

Fox alleges that the evidence used to sustain his convictions for conspiracy to commit securities and mail fraud and conspiracy to commit international money laundering was insufficient to find either an agreement to engage in conspiracy or action demonstrating Fox joined either conspiracy. We review claims of insufficient evidence de novo, and will only disturb the jury's finding if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. *United States v. Shipsey*, 363 F.3d 962, 971 n. 8 (9th Cir.2004).

■ *Conspiracy to commit securities and mail fraud:* Count 1 charged Fox with conspiracy under 18 U.S.C. § 371. The jury's finding that Fox engaged in conspiracy to commit securities fraud was well supported by the evidence. Shortly after Fox became the president and chief executive officer of Cross Financial Services (CFS), he discovered that the company did not engage in any factoring, did not conduct periodic independent reviews of the "lock box" accounts, and did not have insolvency insurance for accounts receivable. All of these missing acts were promised in the promotional materials relied upon by Fox in soliciting investors for CFS. Fox continued to use these materials as well as lender's agreements even though he knew they contained false claims. Further, Fox misappropriated investor funds for a variety of uses including the payment of consultants, engaging in futures spread trading on commodity futures exchanges, purchasing fraudulent letters of credit, and purchasing an airplane and two boats.

Based on these facts, a reasonable fact finder could conclude that Fox engaged in conspiracy to commit securities and mail fraud. Although Cross was not present at any planning meetings, when Fox became president of CFS he continued to perpetuate the fraud first committed by Cross. In so doing, he joined league with the other co-defendants and thereby formed an im-

plicit agreement to engage in a conspiracy. *See United States v. Cloud,* 872 F.2d 846, 852 (9th Cir.1989) ("The agreement need not be explicit; it may be inferred from the defendant's acts pursuant to a fraudulent scheme or from some other circumstantial evidence.").

■ *Conspiracy to commit international money laundering:* Count 26 charged Fox with money laundering conspiracy under 18 U.S.C § 1956(h). After taking control of CFS, Fox purchased through co-conspirators at least two $2 million letters of credit for $1.2 million each. Fox knew these letters of credit were worthless and made arrangements to ensure that investors could not collect on them without CFS financing the entire amount.

While Fox did not receive a profit, it seems clear that he was involved in the transfer of money with the intent to carry on the CFS fraud. Indeed, the jury found him guilty of three counts of international money laundering under 18 U.S.C. § 1956(a)(2)(A). Fox does not contest these findings by the jury. The fact that Fox did not profit directly from these exchanges does not preclude his involvement. The letters of credit were used as an added measure to attract investors to CFS. Viewing the evidence in the light most favorable to the prosecution, a rational fact finder could connect his actions to the movement of money for CFS's benefit, thereby establishing an implicit agreement to the conspiracy.

#### b. Fox's Absence

Fox also argues that the district court's admission of evidence and response to a jury inquiry outside his presence violates his Sixth Amendment right to be present at all critical stages of the criminal proceedings; his Fifth Amendment due process right to a fair trial; and Rule 43 of the Federal Rules of Criminal Procedure.

Where there is no objection to a defendant's absence during a critical stage, a plain error standard of review applies. *See United States v. Romero,* 282 F.3d 683, 689 (9th Cir.2002) (holding plain error standard appropriate where defendant was absent during chambers conference on jury instructions).

■ Here, Fox waived his right to be present. First, Fox's counsel specifically stated that he waived his presence for the hearing to consider the jury's request. Second, prior to trial, Fox signed a written waiver where he waived his right to be present in open court "when any action is taken by the Court before, during, or after trial." The waiver further provided that Fox "agrees that his interests will be deemed represented at all times by the presence of his attorney, the same as if the defendant himself was personally present." Finally, while the record gives no indication of whether Fox knew of the hearing, Fox's counsel bore the responsibility of informing him given prior discussions with the district court. *See United States v. Rewald,* 889 F.2d 836, 854 (9th Cir.1989) (holding defendant waived his right to presence when he was voluntarily absent from pretrial hearings; never informed trial court that he wished to be personally present; and defense counsel never objected to defendant's absence).

#### c. Ineffective Assistance

Finally, Fox alleges that his trial counsel provided ineffective assistance. We decline to hear these claims on direct appeal as the record would be better developed in a habeas corpus proceeding. *United States v. Ross,* 206 F.3d 896, 900 (9th Cir.2000).

Therefore, we affirm Fox's conviction.

III. Sentencing Claims

Both Cross and Fox have challenged their sentences under *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In accordance with *United States v. Castro*, 382 F.3d 927 (9th Cir.2004), we will withhold the issuance of the mandate pending the Supreme Court's decisions in *United States v. Booker*, 375 F.3d 508 (7th Cir.2004), *cert. granted*, —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (Aug. 2, 2004), and *United States v. Fanfan*, 2004 WL 1723114 (D.Me.2004), *cert. granted*, —— U.S. ——, 125 S.Ct. 12, 159 L.Ed.2d 838 (Aug. 2, 2004).

AFFIRMED IN PART. The clerk shall stay the issuance of the mandate until further order of the court.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.