# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

   v.

BRAD RAY SANTINI,
    *Defendant-Appellant.*

No. 10-50391

D.C. No.
3:08-cr-03326-JM-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, Senior District Judge, Presiding

Argued and Submitted
June 6, 2011—Pasadena, California

Filed September 8, 2011

Before: Betty B. Fletcher and N. Randy Smith,
Circuit Judges, and James S. Gwin, District Judge.*

Per Curiam Opinion

---

*The Honorable James S. Gwin, District Judge for the U.S. District Court for Northern Ohio, Cleveland, sitting by designation.

17093

## COUNSEL

Zandra L. Lopez, Federal Defenders of San Diego, Inc., San Diego, California, for appellant Brad Ray Santini.

Laura E. Duffy, United States Attorney for the Southern District of California; Bruce R. Castetter and Lawrence E. Spong, Assistant United States Attorneys, San Diego, California, for appellee United States of America.

---

**OPINION**

PER CURIAM:

Brad Ray Santini appeals his conviction for one count of importation of marijuana, in violation of 21 U.S.C. §§ 952 and 960, and one count of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Santini argues that: (1) the district court erroneously instructed the jury on reasonable doubt; (2) the district court abused its discretion by permitting the government to introduce, through its expert witness, evidence of Santini's previous "law enforcement contacts" and personal marijuana use; and (3) the prosecutor committed misconduct by making certain statements during closing argument. We conclude that it was an abuse of discretion to allow the government to introduce evidence of Santini's prior "law enforcement contacts." Because this error was not harmless, we VACATE Santini's conviction and REMAND to the district court for a new trial. We decline to address Santini's other arguments.

On September 7, 2008, Santini attempted to cross the border from Mexico into the United States. An inspection of his vehicle revealed twenty-eight kilograms of marijuana hidden in the rear seat and spare tire. Santini's defense at trial was that someone else had placed the marijuana in his car without his knowledge. The defense claimed that Santini may have been tricked, arguing that he was easy to manipulate due to a traumatic brain injury he had suffered in 2005. Dr. Dean Delis, a clinical psychologist, testified that Santini had suffered "a severe traumatic brain injury" and that tests showed

Santini "has permanent cognitive deficits" as a result. Dr. Delis explained that Santini's type of injury can cause difficulty with "social perception of other people."

The government sought to rebut this testimony by presenting its own expert, psychiatrist Dr. Mark Kalish. Dr. Kalish testified that his evaluation did not show that Santini's brain injury made him more vulnerable to manipulation. Dr. Kalish based this opinion in part on Santini's "rap sheet." Dr. Kalish explained that the rap sheet showed "extensive prior contacts with law enforcement" before the 2005 accident and that if the charges against Santini were related to his injury, one would not expect to see "similar behavior" before the accident. The defense objected to the admission of Dr. Kalish's testimony regarding the rap sheet and now challenges that testimony on appeal.

We "review[ ] a district court's admission of evidence, including the decision that probative value exceeds unfair prejudice, for an abuse of discretion." *United States v. Cherer*, 513 F.3d 1150, 1157 (9th Cir. 2008). "Harmless errors do not warrant reversal." *Id.* The government argues that Santini's criminal history was either admissible as evidence of his "state of mind" under Federal Rule of Evidence 404(b) or could be introduced as the basis for Dr. Kalish's opinion under Federal Rule of Evidence 703.

**[1]** Rule 404(b) "permits evidence of prior wrongs or acts to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002). The Ninth Circuit uses a four-part test to determine the admissibility of evidence pursuant to Rule 404(b):

> Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the

other act; and (4) (in certain cases) the act is similar to the offense charged.

*Id.* (internal quotation marks omitted). The evidence regarding Santini's criminal history is inadmissible because it fails the third and fourth prongs of this test.

**[2]** Under the third prong, evidence can be admitted "if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Huddleston v. United States*, 485 U.S. 681, 685 (1988). Here, there must have been sufficient evidence to support a finding by the jury that Santini had extensive law enforcement contacts. But the only evidence presented by the government was Dr. Kalish's testimony that he had reviewed Santini's "rap sheet." Dr. Kalish admitted on cross-examination that he found the rap sheet hard to understand, and his report relaying the information contained in the rap sheet did not distinguish among arrests, convictions, or other "contacts" with law enforcement. The rap sheet itself was not admitted into the record or examined by the district court. The defense also argued that this particular rap sheet was unreliable because it listed multiple allegations arising from the same incident as separate contacts. We conclude that the testimony of a psychiatrist relating disputed information contained in a rap sheet, which was neither admitted into the record nor examined by the district court, was not evidence that could support a finding by the jury that Santini had "extensive" law enforcement contacts. Dr. Kalish's testimony on this matter was, thus, not admissible under Rule 404(b).

**[3]** Dr. Kalish's testimony also fails the fourth prong of our Rule 404(b) test. Dr. Kalish testified that Santini's criminal history was significant because it was "similar behavior" to the charged conduct. This is therefore a case that would trigger the fourth prong of the test and require that the prior "act is similar to the offense charged." *Romero*, 282 F.3d at 688. Santini's prior convictions, however, were for simple posses-

sion; other contacts included arrests for indecent exposure and assault. This conduct is not similar to the importation of marijuana and thus lacks probative value.

The government also argues that Santini's criminal history could be disclosed to the jury as the basis for Dr. Kalish's expert opinion pursuant to Rule 703. Rule 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

**[4]** This argument fails for two reasons. First, expert testimony must satisfy the requirements of Rule 702, which provides that an expert's opinion must be "based upon sufficient facts or data." Fed. R. Evid. 702. For the reasons outlined above, the rap sheet was not sufficient to form the basis of Dr. Kalish's opinion that Santini had engaged in "similar" criminal behavior prior to his brain injury. An expert in one field (Dr. Kalish was a psychiatrist) cannot express an opinion relying on data that requires expertise in another field (here, a rap sheet that would require interpretation by an expert in law enforcement record-keeping). *See, e.g.*, *United States v. Chang*, 207 F.3d 1169, 1171-74 (9th Cir. 2000) (affirming the exclusion of an international finance expert's testimony

because he lacked expertise in identifying counterfeit securities).

Second, the statement that Santini had "extensive" prior law enforcement contacts was far more prejudicial than it was probative in assisting the jury to evaluate Dr. Kalish's opinion. Although the district court instructed Dr. Kalish to use general language in an attempt to "sanitize" the criminal history, simply referring to Santini's prior contacts as "extensive" prevented the jury from evaluating whether those contacts were in fact similar to the charged conduct. At the same time, Dr. Kalish's testimony was highly prejudicial, inviting the jury to infer that prior to his 2005 accident Santini imported or distributed drugs.

**[5]** Dr. Kalish's testimony regarding Santini's criminal history was thus not admissible under either Rule 404(b) or Rule 703. It was an abuse of discretion for the district court to allow this testimony.

**[6]** This error was harmful. "An error is harmless if it is more probable than not that the error did not materially affect the verdict." *United States v. Liera*, 585 F.3d 1237, 1244 (9th Cir. 2009) (internal quotation marks omitted).

**[7]** Here, the logical inference for a juror to draw from Dr. Kalish's testimony was that Santini may have imported drugs prior to his 2005 brain injury; in actuality, Santini's prior convictions were for simple possession, and his other contacts were for indecent exposure, traffic offenses, and assault. Although the district court provided a limiting instruction cautioning the jury that "[t]he testimony of Dr. Kalish regarding law enforcement contacts prior to November 2005 may not be considered by you as evidence of bad character or any predisposition to engage in wrongful acts," that instruction did not cure the error. The jury was told to use the testimony to evaluate Dr. Kalish's opinion that Santini's brain injury did not play a role in the charged conduct, and, as Dr. Kalish admit-

ted, that opinion depended in part on the similarity of Santini's prior behavior.

**[8]** Furthermore, the prosecution relied on Dr. Kalish's testimony in closing argument, emphasizing that the defense theory was "blown completely out of the water because prior to the accident, [Santini] had law enforcement contacts." We conclude that it is more probable than not that this error materially affected the verdict.

We therefore VACATE Santini's conviction and REMAND for a new trial.